OPINION
{¶ 1} Defendant-appellant, Cornell S. Kelly, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of rape in violation of R.C.2907.02. Because the sufficiency and weight of the evidence support the trial court's judgment, and because counsel did not render ineffective assistance, we affirm. *Page 2 
 {¶ 2} Defendant was indicted on October 3, 2005 on two counts of rape. The indictment alleged defendant engaged in vaginal intercourse with two different victims, having compelled the victims to submit by force or threat of force. Both charges were tried to a jury beginning July 24, 2006. On August 2, 2006, the jury rendered a not guilty verdict on the first count of rape, but guilty on the second count. The trial court sentenced defendant accordingly. Defendant appeals, assigning the following error:
 THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF RAPE AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In addition, defendant, pro se, filed a supplemental brief assigning two errors:
 [I.] APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHICH DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS.
 [II] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY PERMITTING THE ADMISSION OF INFLAMMATORY, HIGHLY PREJUDICIAL TESTIMONY, THUS VIOLATING APPELLANT'S DUE PROCESS RIGHTS AND RIGHT TO A FAIR TRIAL.
I. First Assignment of Error {¶ 3} Defendant's first assignment of error contends the sufficiency and manifest weight of the evidence do not support the jury's verdict finding him guilty of rape. R.C. 2907.02(A)(2) defines rape and provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other to submit by force or threat of force." *Page 3 
 {¶ 4} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 5} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt.Conley, supra; Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 6} According to the state's evidence, the victim met defendant, probably in early August 2005, while she was at a party of a friend who lived next door. Defendant, who at the time was staying at a house across the street, stopped by the party and began talking to the victim; they became friends. Defendant started to come to the victim's house more often, sometimes making a few comments about her looks or a sound like he found the victim attractive. On occasion he would give her a hug or grab her "butt," or both, but she told him to stop. (Tr. 323.) The victim called defendant a few times to come to her *Page 4 
house and "hang out." Id. Sometimes she asked if he had any pills or "anything like that." Id. If he said yes, she asked him to bring them. She testified the Xanax defendant brought relaxed her; he also brought her Percocet.
 {¶ 7} In the course of their visits, defendant told the victim he had a cousin involved in an alleged rape. He explained that he wanted to help his cousin by reenacting the scene to determine whether the rape possibly could have occurred in that position. The victim refused. The victim and defendant saw each other probably nine or ten times before September 3, 2005.
 {¶ 8} On September 2, 2005, the victim was with friends and had a few beers, possibly more. She called defendant three or four times and told him to come to be with her and her friends, probably four or five people altogether. She also called her friend Sterling to come to her house. Defendant arrived around 3:30 or 4:00 a.m. on September 3 to find the victim sitting on her porch alone. He brought her pills, and she took two Xanax pills with beer. They talked a few minutes, and defendant again proposed they reenact the rape he mentioned, but she said no. He then took her hand, and they went inside her house; she thought they were going to watch television. When he again suggested the reenactment, she agreed but told him it would involve no sex, no kiss, "nothing like that." (Tr. 328.)
 {¶ 9} With the victim facing the counter in the kitchen, defendant placed her hands on the counter. Because she was not in the position she thought the scenario would entail, she asked defendant "what's going on," and defendant pulled down her pants and underwear. (Tr. 330.) She pulled them up very quickly and then "just looked at him and I kinda of all right no, this is not going to happen, you know." (Tr. 331.) In *Page 5 
response, defendant "kind of chuckled" and told her he was just joking; he said he wanted to continue the scenario, and it would not happen again. Id. She believed him.
 {¶ 10} Defendant started to discuss how his cousin's situation allegedly occurred, and again pulled down the victim's pants. She told him he needed to leave. Instead, he placed his penis against her buttocks, and then put his penis into her vagina. She attempted to push him away, but he restrained her by placing his arms around her midriff. Although she attempted to turn around to push him away, he put one or both arms around her, holding her in a way that kept her from turning easily; she resorted to trying to push him away with her back. She tried to make him stop, but he forcibly moved her around the kitchen. She testified she did not know whether he ejaculated, because he stopped and left quickly when Sterling knocked at the door. According to the victim, never in the entire time she knew defendant did she indicate she wanted to engage in any sexual activity with him and indeed told him on September 3, 2005 she did not want to have sexual relations with him.
 {¶ 11} As Sterling entered the house, she pulled up her pants. Sterling, however, knew something was wrong. He forced her to talk about it and ultimately called an ambulance that transported her to Grant Medical Center where Theresa Colbert, a registered nurse and a sexual assault nurse examiner, performed a forensic examination of the victim. Also present was a nurse in training who recorded the victim's version of the incident.
 {¶ 12} Examination of the victim revealed posterior laceration three-quarters of an inch long in the fourchette area. According to Colbert, the injury could have been caused by blunt force trauma, including forceful vaginal intercourse. She testified the wound *Page 6 
showed no signs of healing or scabbing, but appeared to be a "new fresher kind of wound." (Tr. 443.) Examination of swabs and slides taken as part of the forensic examination revealed no semen or spermatozoa, no semen on any clothing, and no rips or damage to the victim's panties.
 {¶ 13} While the victim was at Grant Medical Center, Detective David Pelphrey interviewed her. According to the detective, the victim "was quite kind of low key as I perceived her, and she was kind of scared and soft spoken at the time. I think she was maybe a little tearful in describing things that occurred to her to me. She was kind of scared." (Tr. 399.) After leaving the hospital, the detective called defendant's cell phone at about 5:00 p.m. and asked defendant to come to police headquarters to talk. Defendant said he was in Delaware County and it would take about 30 minutes for him to arrive, but "he would come down and talk to me that night." (Tr. 408.) Defendant did not come to headquarters that night.
 {¶ 14} On September 8, 2005, the detective conducted a second interview of the victim at her house. According to the detective, the two interviews were substantially similar in that "[s]he described the same incident of being led through the house into the kitchen, the circumstance of him pinning her and then the actual sexual assault of his penis going into her vagina." (Tr. 427.)
 {¶ 15} Defendant's sole witness was his mother, who offered no testimony regarding the charge at issue, but rather testified to defendant's involvement in the music industry.
 {¶ 16} The victim's testimony provides sufficient evidence to support the judgment of the trial court. The victim testified defendant led her to believe he, without sex or *Page 7 
kissing, would reenact a sexual assault with which his cousin was charged. Instead, despite the victim's telling him to stop, defendant pulled down the victim's pants, placed his penis against her buttocks, and then put his penis into her vagina. She attempted to push him away, but he restrained her by placing his arms around her midriff. Her attempts to push him away with her back were unsuccessful; he forcefully moved her around the kitchen, continuing to rape her, until Sterling knocked at the door. Her testimony, if believed, establishes that defendant engaged in sexual conduct with the victim against her will through the use of force. As cross-examination revealed, however, not all the details of the state's evidence were consistent.
 {¶ 17} Based on the inconsistencies in the victim's testimony, the detective's first and second interviews, and the victim's statement to the nurse in training, defendant contends that, even if sufficient evidence supports the verdict, the verdict is against the manifest weight of the evidence. Defendant notes that in first describing the events to the detective, the victim stated she was not sure whether defendant ejaculated; the victim's statement to the nurse in training indicates he did. Defendant further points out that the victim told the detective she did not know why defendant stopped raping her, but once he did, he pulled up his pants and ran out of her house; she sat on the sofa and then Sterling came into the house. By contrast, she told the detective during the second interview, and so testified, that defendant stopped when Sterling came to her house. Defendant also notes that during the second interview, she for the first time mentioned both the Xanax and the Percocet she took the evening of the assault, as well as defendant's previously supplying her with pills. In that same interview she also mentioned her baby crying upstairs, a fact the detective was not sure she mentioned during the first interview. *Page 8 
 {¶ 18} Because determinations of credibility and weight of the testimony remain within the province of the trier of fact, a jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." State v.Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citingState v. Antill (1964), 176 Ohio St. 61, 67. The jury was fully aware of the victim's pill and alcohol consumption, the inconsistencies in the first and second interviews with the detective, and the divergence between her testimony and the description given to the nurse in training at Grant Medical Center. Considering the inconsistencies and weighing the credibility of the victim, the jury could have rejected the victim's testimony, but chose to believe it.
 {¶ 19} The record provides a rational reason for the jury's decision. The detective testified at trial not only about why he conducted a second interview, but why discrepancies may exist between the content of the two interviews. As the detective explained, law enforcement officers are trained to obtain as much information as possible during the course of the first interview, particularly so that any evidence may be collected. He, however, testified "our further training has led us to believe that after three sleep cycles the victim of a sexual assault will be less traumatized and better rested and better capable of filling in some of the details of the assault that perhaps the trauma did not allow him or her to disclose during that initial interview." (Tr. 419.) As a result, "there is some thought in our sexual assault investigating community that the first interview should be short." Based on that testimony, the jury reasonably could have attributed some of the discrepancies to the trauma of the incident.
 {¶ 20} Our review of the manifest weight of the evidence involves a limited weighing of the evidence, but inconsistencies in the testimony generally do not render the *Page 9 
verdict against the manifest weight of the evidence. State v.Thompson (1998), 127 Ohio App.3d 511, discretionary appeal not allowed,83 Ohio St.3d 1451; State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 (noting that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence"). Although the victim's descriptions of the events to law enforcement, medical personnel, and the jury varied, the jury properly could sort through the evidence and believe the trial testimony the victim offered. Because we cannot conclude the jury lost its way in determining the credibility of the evidence, we overrule defendant's first assignment of error.
II. Defendant's Pro Se Supplemental Assignments of Error {¶ 21} In his supplemental assignments of error, defendant primarily contests the detective's testimony concerning his telephone call to defendant's cell phone number, his conversation with defendant, and his testimony that defendant failed to appear at police headquarters.
 {¶ 22} Evid.R. 901 addresses the admissibility of telephone conversations and provides that authentication or identification is a condition precedent to admissibility. Evidence sufficient to support a finding that the matter in question is what its proponent claims will satisfy the requirements of the rule. Id. Thus "[t]estimony as to a telephone call is admissible where there is a reasonable showing, through testimony or other evidence, that the witness placed or received a call as alleged, plus some indication of the identity of the person spoken to. * * * `There is no fixed identification requirement for all calls.' * * * *Page 10 
`Each case has its own set of facts.'" State v. Vrona (1988),47 Ohio App.3d 145, 149, quoting Leonard v. Mowbray (1926), 21 Ohio App. 268,276. "[D]irect and circumstantial evidence which reasonably identifies the defendant as a party to a telephone conversation establishes a sufficient foundation to admit evidence of the conversation in a criminal case." State v. Williams (1979), 64 Ohio App.2d 271, 274.
 {¶ 23} Here, the detective testified he had access to a cell phone number for defendant through one of the police computer programs. "I made a phone call approximately around five o'clock Saturday afternoon. I did speak to Mr. Kelly at that time very briefly." (Tr. 407.) The detective testified he did not tell defendant why he wanted defendant to come to headquarters, but only that he wanted defendant to come, and it was important. The detective further testified he had the opportunity to speak with defendant after defendant's arrest.
 {¶ 24} The detective's testimony regarding his conversation with defendant arguably meets the requirements of Evid.R. 901. The detective testified he called the telephone number for defendant appearing on his computer program; he also presumably asked if he was speaking to defendant when someone answered at that number, though he did not so testify. Because no evidence indicates the detective spoke with defendant at any time before the call at issue, the record presents no basis to suggest the detective could at the time of the call identify the voice he reached as that of defendant. He, however, spoke with defendant after his arrest and in retrospect could determine the voice to be the same, though again he did not explicitly testify to the sameness.
 {¶ 25} Given the broad latitude the trial court has in determining the admissibility of evidence, the trial court arguably was within its discretion in allowing the testimony under *Page 11 
such facts. Even if the testimony were inadmissible, the record does not show the requisite prejudice. Defendant, who was not under arrest, simply opted not to voluntarily speak with law enforcement when he failed to appear at police headquarters, a decision that does not carry with it the same inference of guilt associated with fleeing.
 {¶ 26} Defendant also contends his attorney was ineffective in failing to request a mistrial when the trial court overruled defendant's objection to the detective's testimony. To prove ineffective assistance of counsel, defendant first must demonstrate that counsel's performance was deficient. Strickland v. Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052. To meet the requirement, defendant must show counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. The defendant next must demonstrate the deficient performance prejudiced the defense. Id. To meet the second prong of the Strickland test, defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Id.
 {¶ 27} Defense counsel acted appropriately in objecting to the matter. We have determined the testimony arguably is admissible, but even if it is not, the record fails to demonstrate the requisite prejudice to warrant reversing his conviction. Under those circumstances, a motion for mistrial was not warranted, and counsel was not ineffective in failing to request a mistrial.
 {¶ 28} Defendant also suggests counsel was ineffective in failing to argue the various discrepancies in the victim's testimony, the information the victim gave to the *Page 12 
detective, and the facts she related to the nurse in training. We, however, do not know whether counsel failed to argue the discrepancies, as closing argument is not transcribed as part of the record. SeeKnapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199 (stating "[t]he duty to provide a transcript for appellate review falls upon the appellant," as "an appellant bears the burden of showing error by reference to matters in the record").
 {¶ 29} Finally, to the extent defendant contends the discrepancies in the victim's various statements and testimony require a verdict in his favor, we again note the jury, charged with the duty of evaluating the credibility of the witness, heard the discrepancies that defendant highlighted in cross-examination and nonetheless determined the victim's testimony was believable. This record provides no basis for us to set aside that determination. Defendant's supplemental assignments of error are overruled.
 {¶ 30} Having overruled all of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 SADLER, P.J., and KLATT, J., concur. *Page 1