DECISION
{¶ 1} Defendant-appellant, Shoul A. Wren, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of one count of aggravated burglary and one count of discharging a firearm into a habitation. Defendant assigns a single error:
Appellant's convictions are against the manifest weight of the evidence. Because the manifest weight of the evidence supports defendant's conviction, we affirm. *Page 2 
 {¶ 2} By indictment filed October 23, 2007, defendant was charged with one count of aggravated burglary in violation of R.C 2911.11, one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161, and one count of felonious assault in violation of R.C. 2903.11. Each count carried a firearm specification. After a trial beginning March 10, 2008, the jury found defendant guilty of aggravated burglary and improper discharge of a firearm; he was acquitted of the felonious assault charge and of all three firearm specifications. In his single assignment of error, defendant contends the manifest weight of the evidence does not support his conviction.
 {¶ 3} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. State v.Tanksley, Franklin App. No. 07AP-262, 2007-Ohio-6596, citing State v.Conley (Dec. 16, 1993), Franklin App. No. 93AP-387; State v.Thompkins (1997), 78 Ohio St.3d 380, 387 (stating that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). The court, reviewing the entire record, determines whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the manifest weight of the evidence are reserved for cases where the *Page 3 
evidence weighs heavily in favor of the defendant. State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 4} The chain of events leading to defendant's conviction began with a conflict between DeAngelo Shaw and his girlfriend Chant'a Serrano in August 2005. Shaw owed Serrano money, and an altercation ensued when she attempted to collect from him. Serrano's friend Stella Champelle, who was defendant's girlfriend and the mother of his children, tried to intervene, and Shaw ended up knocking her to the ground. In response, Champelle called defendant. Soon afterwards, defendant and Justin Smith arrived. Serrano testified defendant brandished a gun, but Champelle, Smith, and defendant testified Shaw, not defendant, had a gun that day. After exchanging words with Shaw, defendant, with Champelle and Smith, left without further incident.
 {¶ 5} On September 7, 2005, defendant and Smith went to the residence of Dana Shaw, DeAngelo Shaw's mother. According to Dana, she was sitting on her front porch when a man grabbed her, pointed a gun at her head, and told her to remain silent. A second man walked up to the front door and opened it. After the second man said "um-hum, yes," the first man went to the door and fired a single shot into the residence. (Tr. 34.) The bullet went through a wall in the house; no one was injured. After police arrived at the scene, they recovered the bullet casing but not the bullet.
 {¶ 6} Serrano and DeAngelo Shaw were sitting on a couch inside the house with their daughter and Shaw's son. Through her friendship with Champelle, Serrano had known defendant for at least four or five years. She testified that as she, Shaw, and the two children were sitting on the couch, "[defendant] opened the door, stepped in, looked *Page 4 
around and seen DeAngelo. DeAngelo got up and tried to run through the doorway. [Defendant] then shot one time." (Tr. 55.)
 {¶ 7} Shaw also testified, even though his appearance in court resulted in his arrest on non-related outstanding warrants. According to Shaw, he saw one person open the screen door leading into the house from the porch, joined soon after by another individual. While Shaw later identified defendant in a photo array as one of the two men, he could not recall which of the two had the gun. Smith testified he was present at the scene, but did not go onto the porch; he witnessed defendant open the door and then heard a shot.
 {¶ 8} Given that evidence, defendant points to several facts and asserts they place the accuracy of the testimony against him in doubt. Initially, defendant notes neither Dana nor Shaw identified defendant as the shooter, and Dana was unable to identify either defendant or Smith from a photo lineup. While Shaw testified he recalled defendant being at the scene of the shooting, defendant maintains Shaw's memory is suspect. In support, he notes Shaw's recollection of the August 2005 incident varied significantly from the testimony the other witnesses offered: Shaw denied possessing a firearm during that incident, but defendant, Smith and Champelle testified Shaw was carrying a gun at that time. Finally, defendant argues Smith's testimony is unreliable because Smith agreed to testify against defendant in return for case consideration.
 {¶ 9} Defendant contends, by contrast, that his account of the incident depicting Smith as the shooter is plausible and consistent with the facts. According to defendant, Smith possessed the gun at the time of the shooting because he was holding it as collateral for a video game system defendant was buying from Smith. While both *Page 5 
defendant and Champelle testified to such arrangement, Smith denied the transaction. Defendant testified that, shortly after the shooting, he paid Smith, and Smith then gave the gun back to defendant. Only then, defendant asserts, did he learn from Smith that Smith had used the gun to shoot at Shaw. Because the gun was registered to Champelle, defendant stated he put it in his vehicle to keep her from getting into any trouble. Defendant's vehicle was later repossessed and returned to the dealer's lot, where a mechanic discovered the gun and notified police. After an investigation, police were able to connect the gun with the September 7, 2005 shooting through the bullet casing recovered at the scene.
 {¶ 10} The alleged inconsistencies in the evidence fall short of supporting defendant's claims that the manifest weight of the evidence does not support his conviction. While our review of the manifest weight of the evidence involves a limited weighing of the evidence, defendant's argument rests on inconsistencies in the testimony offered. Inconsistencies in the testimony generally do not render the verdict against the manifest weight of the evidence. State v. Thompson (1998),127 Ohio App.3d 511, 529, discretionary appeal not allowed,83 Ohio St.3d 1451 (stating that "[a] reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder"); State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 (noting that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence"). Rather, the jurors may discount portions of a witness' *Page 6 
testimony and accept only a part of it as true. State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667.
 {¶ 11} Although defendant correctly points out inaccuracies and inconsistencies in the testimony presented to the jury, the jury in rendering its verdict apparently found the testimony supporting conviction of defendant more credible than the evidence tending towards acquittal. Significantly, the witnesses defendant highlights in attacking his conviction, while important, were not the witnesses who provided the clearest evidence of his guilt. Instead, the state's key witness was Serrano, and defendant on appeal does not challenge the accuracy of her testimony. Because Serrano identified defendant as the shooter and had known defendant for at least four or five years, we cannot say the jury lost its way and created a manifest miscarriage of justice when it found the evidence of defendant's guilt, and in particular Serrano's testimony, to be credible evidence against defendant. Defendant's assignment of error is overruled.
 {¶ 12} Having overruled defendant's single assignment of error, we affirm the trial court's judgment.
Judgment affirmed.
 BROWN and KLATT, JJ., concur. *Page 1