**[Cite as *State v. McCreary*, 2025-Ohio-5822.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-25-00030

    Appellee                                    Trial Court No. CR0202402435

v.

Daniel G. McCreary                            **DECISION AND JUDGMENT**

    Appellant                                    Decided: December 30, 2025

* * * * *

Julia R. Bates, Esq., Lucas County Prosecutor, and
Lorrie Rendle, Assistant Prosecuting Attorney, for appellee.

Ann M. Baronas, Esq., for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Following a jury trial, defendant-appellant, Daniel McCreary, appeals the January 15, 2025 judgment of the Lucas County Court of Common Pleas, convicting him of aggravated burglary. For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} Daniel McCreary was charged with aggravated burglary in connection with the August 15, 2024 beating of his ex-girlfriend, H.W. The case was tried to a jury and the following evidence was presented.

{¶ 3} Toledo Police Officer Christopher Mulinix testified that on August 15, 2024, he was working at the Scott Park station when he was called to assist a citizen in distress. Upon arrival, he found H.W. sitting in the lobby, visibly upset and shaken. Officer Mulinix and his partner, Chelsea Barwiler, engaged in a conversation with her to understand the situation.

{¶ 4} Officer Mulinix observed that H.W. had sustained severe injuries, particularly noting bleeding from her head and other marks on her body. He described that H.W. had a contusion on her forehead, blood on her arms and shirt, and possible defensive wounds on her hands and arms. He documented these injuries by taking photographs, which were admitted into evidence at trial. Fire department personnel were called to evaluate and treat her injuries.

{¶ 5} Detective Benjamin Jordan testified that he spoke with H.W. at the Scott Park station after she was treated by Toledo Fire. She appeared to him to be "vulnerable." Her head injury was covered with gauze, but Jordan observed visible bruising and swelling on her right arm consistent with defensive actions during an assault. H.W. later received two staples to her head at Mercy St. Anne's, which Jordan verified through medical records and photographs.

2.

**{¶ 6}** H.W. told Jordan that Daniel McCreary had committed the assault. She said that she had ridden her bike from the incident location at 3019 Nebraska, just over a mile from the Scott Park station. Jordan drove around the area for approximately 30 minutes attempting to locate McCreary, but was unsuccessful. He returned to the station to file a warrant. Based on his investigation, Jordan determined that aggravated burglary charges were appropriate because McCreary allegedly entered H.W.'s residence and assaulted her.

**{¶ 7}** H.W. testified that McCreary was her ex-boyfriend at the time of the incident. They met in April of 2024, and although the relationship started out well, it deteriorated due to a change in McCreary's behavior. H.W. described that on August 15, 2024, she and McCreary were still somewhat involved, but not officially together.

**{¶ 8}** According to H.W., McCreary was dropped off at her home that afternoon unexpectedly, which was not unusual. She asked him to leave because she did not want him there anymore. They had a verbal altercation on her porch, and she may have said some "belligerent" things to McCreary. The argument escalated when McCreary struck her with a closed fist. H.W. hit him back and tried to enter her house, but her arm was caught between the doors. H.W. believes that she sustained bruising to her arms when her arm was caught between the doors as she tried to prevent McCreary from entering her house. Despite her attempts to prevent his entrance, McCreary managed to enter the house. H.W. confirmed that McCreary was not living with her at the time, did not receive mail at her address, and did not have a key to her home.

3.

{¶ 9} H.W. recalled being on the floor with blood everywhere and losing consciousness. After regaining consciousness, H.W. used a bag of mixed vegetables to stop the bleeding. Although she had a vehicle and could have called 9-1-1, she instead chose to ride her bike to seek help due to significant blood loss. She was picked up by a friend and taken to the police station.

{¶ 10} H.W. received initial medical attention at the police station, where her wound was cleaned and bandaged, and she was advised to go to the emergency room. She went to St. Anne's hospital for further treatment. H.W. sustained a laceration to her head, which required staples, and bruising to her arm and hand. Photographs of her injuries, including the staples and bruising, were admitted into evidence. Following the incident, H.W.'s property manager requested her to move out. H.W. testified that she has not seen McCreary since the incident.

{¶ 11} On cross-examination, H.W. conceded that the medical records from St. Anne's indicate that she denied losing consciousness. Those records instead indicate that she "saw lights." She testified she was in and out of consciousness and was dizzy and disoriented. She confirmed that despite these symptoms, she chose to ride her bicycle to the police station rather than call 9-1-1 or ask a neighbor for help.

{¶ 12} After the State rested, McCreary moved for acquittal under Crim.R. 29(A). He argued that the State failed to present evidence of the elements of trespass and assault. The State responded that the victim had just testified that she was assaulted by McCreary and he had broken into her home after initiating the assault. The court denied

4.

McCreary's motion. McCreary rested without presenting any evidence and renewed his motion, which was again denied.

{¶ 13} The jury found McCreary guilty of aggravated burglary, a violation of R.C. 2911.11(A)(1) and (B), a felony of the first degree. The trial court sentenced McCreary to a minimum stated prison term of five years and a maximum indefinite prison term of seven and one-half years.

{¶ 14} McCreary appealed. He assigns the following errors for our review:

> ASSIGNMENT OF ERROR NO. 1: THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING THE MOTION FOR AQUITTAL (sic) PURSUANT TO CRIM. R. 29.

> ASSIGNMENT OF ERROR NO. 2: APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## II. Law and Analysis

{¶ 15} In his first assignment of error, McCreary argues that the trial court erred in denying his motion for acquittal, claiming that the evidence was insufficient to support his conviction. In his second assignment of error, he argues that his conviction is against the manifest weight of the evidence.

## A. Crim.R. 29(A)

{¶ 16} In his first assignment of error, McCreary argues that the trial court erred when it denied his motion for acquittal under Crim.R. 29(A). A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 2005-Ohio-1507, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed

5.

by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶ 17} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 18} Under R.C. 2911.11(A)(1), "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure . . . when another person . . . is present, with purpose to commit in the structure . . . any criminal offense, if . . . [t]he offender inflicts, or attempts or threatens to inflict physical harm on another." Here, the underlying criminal offense was assault. Under R.C. 2903.13(A), "[n]o person shall knowingly cause or attempt to cause physical harm to another. . . ."

6.

{¶ 19} McCreary argues that there was no evidence presented to establish (1) that he trespassed, or (2) that it was his purpose to commit assault or any other any offense. As such, he claims, there was no proof to meet the elements of aggravated burglary.

{¶ 20} The State responds that it presented legally-sufficient evidence to establish all essential elements of the crime. As to trespass, it highlights H.W.'s testimony that McCreary showed up at her home uninvited; he did not live there; she told him to leave and that she did not want him there; she attempted to seek safety inside her home; and McCreary forced his way inside, where he continued to beat her until she either lost consciousness or "saw lights." As to the assault, it points to H.W.'s testimony that as a result of McCreary beating her, she suffered a contusion and laceration to her forehead, which required two staples, bruising, and scratches on her arms and hands. The State emphasizes that H.W.'s injuries were corroborated by photos of her injuries, medical records from the emergency-room visit, and photos of the blood on her kitchen floor. The State insists that when viewed in a light most favorable to the prosecution, there is no question that the State's evidence was legally sufficient to sustain McCreary's conviction for aggravated burglary.

{¶ 21} R.C. 2911.21(A)(1)—the criminal trespass statute—provides that "[n]o person, without privilege to do so, shall [k]nowingly enter or remain on the land or premises of another[.]" H.W. testified that McCreary was not living with her, did not receive mail at her address, and did not have a key to her home. She asked him to leave and told him she did not want him there, and she tried to prevent him from entering her

7.

home by closing the door, but she was unsuccessful. This testimony was sufficient to establish the element of trespass.

{¶ 22} As to McCreary's purpose to commit assault, "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). The Ohio Supreme Court has recognized that "[f]or purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes,* 87 Ohio St.3d 527 (2000), syllabus.

{¶ 23} Here, H.W. testified that McCreary beat her in the head with a closed fist and forced his way inside while she tried to shut him out of the house. She sustained defensive wounds to her arms and hands as she attempted to fend off the attack and close the door to prevent his entrance. Her wounds required medical treatment, including staples to close the wound to her head. In addition to H.W.'s testimony, Officer Mulinix and Detective Jordan observed and described these wounds, pictures of the wounds were admitted into evidence, and H.W.'s medical treatment was corroborated by medical records. This evidence was sufficient to prove that McCreary trespassed in H.W.'s home with the purpose to commit an assault against her.

{¶ 24} We find McCreary's first assignment of error not well-taken.

8.

## B. Manifest Weight

{¶ 25} In his second assignment of error, McCreary argues that his conviction was against the manifest weight of the evidence. When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 2012-Ohio-6068, ¶ 15 (6th Dist.), citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 26} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.). "The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the

9.

incredible parts." *State v. Hill*, 2024-Ohio-2744, ¶ 24 (7th Dist.), citing *State v. Barnhart*, 2010-Ohio-3282, ¶ 42 (7th Dist.), citing *State v. Mastel*, 26 Ohio St.2d 170, 176 (1971). "When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we will not choose which one is more credible." *Id.,* citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999).

**{¶ 27}** McCreary argues that his conviction was against the manifest weight of the evidence because H.W. could not remember (1) if McCreary was her current or ex-boyfriend, (2) whether she lost consciousness or not, or (3) what the argument was about. He also maintains that H.W. provided inconsistent testimony about whether she rode to the station on a bike or whether she rode in a car with a friend.

**{¶ 28}** The State responds that McCreary's manifest-weight challenge merely suggests that H.W.'s credibility ought to be questioned or scrutinized because of alleged inconsistencies. It argues that the jury was free to believe all, some, or none of H.W.'s testimony, and the conviction is not against the manifest weight of the evidence simply because it believed the testimony presented by the State.

**{¶ 29}** Again, the State points out that McCreary showed up at H.W.'s home uninvited. H.W. told McCreary to leave and that she did not want him there, then sought safety inside her home when McCreary became physically violent. McCreary forced his way inside and continued to beat her until she either lost consciousness or "saw lights." As a result of this beating, H.W. sustained injuries to her head, hands, and arms that were corroborated by photos, medical records, and the testimony of officers who saw H.W.

10.

soon after the incident. The State insists that the jury did not lose its way and create a manifest miscarriage of justice when it found McCreary guilty of aggravated burglary.

{¶ 30} "Inconsistencies in [] testimony generally do not render [a] verdict against the manifest weight of the evidence." *State v. Wren,* 2008-Ohio-6512, ¶ 10 (10th Dist.), citing *State v. Thompson,* 127 Ohio App.3d 511, 529 (8th Dist. 1998). Where a victim's descriptions of the events to law enforcement and medical personnel are inconsistent with his or her trial testimony, the jury must simply sort through the evidence and determine what evidence to believe. *See State v. Kelly*, 2007-Ohio-4406, ¶ 20 (10th Dist.).

{¶ 31} Here, H.W. testified that she and McCreary were in an on-again-off-again relationship. She could not recall exactly why they were arguing, but was very clear that she did not want him at her home. It was not entirely clear whether H.W. rode her bike to Scott Park or whether her friend picked her up. And H.W. testified that she lost consciousness, but told E.R. staff that she "saw lights."

{¶ 32} Ultimately, none of these details negate any element of the offense. As far as whether it rendered H.W. not a credible witness, the jury apparently concluded that H.W. was credible despite any inconsistencies in her versions of events.

{¶ 33} In *In re Z.C.,* 2023-Ohio-4703, the Ohio Supreme Court reminded that when reviewing a manifest-weight challenge, "'[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.'" *Id.* at ¶ 14, quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. It explained that deference is owed to the factfinder because the finder of fact "'is best able to view the witnesses and

11.

observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.,* quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 34} Here, the jury found H.W. credible. We cannot say that the jury clearly lost its way in doing so such that it created a manifest miscarriage of justice requiring reversal. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 35} Accordingly, we find McCreary's second assignment of error not well-taken.

### III. Conclusion

{¶ 36} The State presented evidence that McCreary beat the victim in the head with a closed fist and forced his way into the house while she tried to prevent his entry. His conduct caused wounds that required medical treatment, and proof of the victim's injuries was admitted into evidence. This evidence was sufficient to prove that McCreary trespassed in the victim's home with the purpose to commit an assault against her. We find McCreary's first assignment of error not well-taken.

{¶ 37} Any inconsistencies in the victim's trial testimony did not negate any element of the offense. As far as whether it rendered her not a credible witness, the jury found her testimony credible despite any alleged inconsistencies. The jury was in the best position to evaluate her credibility, and we cannot say that it clearly lost its way in resolving evidentiary conflicts such that it created a manifest miscarriage of justice

12.

requiring reversal.  This is not the exceptional case in which the evidence weighs heavily against the conviction.  We find McCreary's second assignment of error not well-taken.

{¶ 38} We affirm the January 15, 2025 judgment of the Lucas County Court of Common Pleas.  McCreary is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

_____
JUDGE

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.