**The STATE of Ohio, Appellee,**

v.

**PARRISH, Appellant.**

[Cite as *State v. Parrish* (1991), 71 Ohio App.3d 659.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–353.

Decided Jan. 31, 1991.

*Michael Miller*, Prosecuting Attorney, and *James V. Canepa*, for appellee.

*James Kura*, County Public Defender, and *David Strait*, for appellant.

---

JOHN C. YOUNG, Judge.

On March 9, 1989, the Franklin County Grand Jury returned an indictment charging appellant, Rory Parrish, with aggravated murder with death penalty specifications, in violation of R.C. 2903.01, and two counts of aggravated robbery, in violation of R.C. 2911.01. The indictment alleged that on or about December 16, 1988, appellant killed DuWayne Turner during the course of the aggravated robbery of Turner and Lynette Scott.

The case came on for jury trial in the Franklin County Court of Common Pleas on January 8, 1990. On January 17, 1990, the jury returned a verdict of guilty as to all three counts of the indictment.

On February 20, 1990, the case proceeded to a mitigation hearing in accordance with R.C. 2929.03. On February 22, 1990, the jury returned a verdict finding that the aggravating circumstances presented by the case were not sufficient to outweigh the mitigating factors present. The jury unanimously recommended that appellant be sentenced to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

By journal entry dated March 1, 1990, the court entered judgment of conviction as to all three counts of the indictment. The court imposed a sentence of thirty years to life on the aggravated murder count and not less than ten nor more than twenty-five years with an additional three years of actual incarceration for the use of a firearm on each of the two aggravated robbery counts. All sentences were to run concurrent with each other and with the sentence on the aggravated murder charge.

On March 23, 1990, appellant filed a notice of appeal to this court and raises the following five assignments of error:

"Assignment of Error Number One

"The trial court erred by permitting the prosecution to cross-examine the accused on irrelevant, inflammatory and unfairly prejudicial issues thereby depriving appellant of a fair trial.

"Assignment of Error Number Two

"The trial court committed reversible error and deprived appellant of due process of law by permitting the introduction of impermissible and unfairly prejudicial rebuttal testimony by the prosecution.

"Assignment of Error Number Three

"Appellant was deprived of a fair trial as guaranteed by the constitutions of the United States and the state of Ohio by the misconduct of the prosecution during closing arguments.

"Assignment of Error Number Four

"The trial court committed plain error by failing to repeat in the charge at the conclusion of the evidence matters previously covered in preliminary instructions.

"Assignment of Error Number Five

"The cumulative effect of the improper cross-examination, rebuttal and closing argument by the prosecution, and the failure of the court to charge the jury properly on the issue of credibility worked to deprive appellant of a fair trial as guaranteed by the United States and Ohio constitutions."

Appellant's brief correctly states that the evidence adduced at the trial sets forth two irreconcilable versions of the events on December 16, 1988. The testimony of Lynette Scott, if found credible, would support the verdict of the jury. However, the testimony of the appellant, if found credible, would establish the affirmative defense of self-defense.

In his first assignment of error, appellant asserts that the trial court erred by permitting the prosecution to cross-examine him as to irrelevant, inflammatory and unfairly prejudicial issues thereby depriving appellant of a fair trial.

Appellant maintains that the line of questioning by the prosecution was an attempt to elicit "other acts" testimony which was inadmissible, unfairly prejudicial, and is grounds for reversal.

Under the Ohio Rules of Evidence, all evidence is relevant when it has " * * * any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

■ Evidence of other acts of a criminal defendant is admissible, pursuant to Evid.R. 404(B) and R.C. 2945.59, only if one or more of the matters enumerated therein are a material issue at trial and only if such evidence tends to show the material enumerated matter. *State v. Curry* (1975), 43 Ohio St.2d 66, 72 O.O.2d 37, 330 N.E.2d 720. Ohio law recognizes a limited exception to the rule of inadmissibility in Evid.R. 404(B) and R.C. 2945.59. Evid.R. 404(B) provides as follows:

" * * * Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

R.C. 2945.59 states as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

In *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, the Supreme Court held, in paragraph one of the syllabus, as follows:

"Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. (*State v. Burson* [1974], 38 Ohio St.2d 157, 158–159 [67 O.O.2d 174, 175, 311 N.E.2d 526, 528]; *State v. DeMarco* [1987], 31 Ohio St.3d 191, 194 [31 OBR 390, 392, 509 N.E.2d 1256, 1259], followed.) The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact 'tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. (*State v. Flonnory* [1972], 31 Ohio St.2d 124, 126, [60 O.O.2d 95, 96–97, 285 N.E.2d 726, 729], followed.)"

 In the present case, the appellant objected to the inquiry by the prosecution concerning appellant's possession of firearms while living at 617 Seymour. Specifically, the prosecutor asked whether the police found firearms in the house in which appellant was living on February 12, 1989. The state maintains that appellant's direct testimony put into dispute matters concerning his opportunity to possess firearms.

The record indicates that Lynette Scott testified that neither she nor the victim owned firearms and that no firearms were kept in her home. Scott further testified that appellant had a gun in his possession when he first arrived at her home with the victim on December 16, 1988. She described the firearm as a black revolver and stated that the appellant placed the firearm underneath her couch.

On direct examination, appellant contradicted Scott's testimony concerning the murder weapon. Appellant denied having or carrying a firearm into Scott's apartment on December 16, 1988. Appellant maintained that as he was preparing to leave the apartment, the victim produced the gun and was prepared to use it against him.

The prosecution's cross-examination included an inquiry into whether or not the appellant had possessed or had access to firearms while residing in Columbus. The inquiry proceeded as follows:

"Q. [Prosecution] Would you agree with me that [selling drugs is] a dangerous business?

"A. [Appellant] yes.

"Q. Do a lot of the drug dealers possess guns?

"A. Some do, some don't.

"Q. Did you ever possess a gun while you were selling drugs?

"Mr. Love: [Defense counsel] Objection.

"The Court: Overruled.

"A. No.

"Q. [Prosecution] Do you own any guns?

"A. No.

"Q. Are you aware or could you have possessed * * * guns, while you were residing at 617 Seymour right here in Franklin County, State of Ohio?

"Mr. Love: Objection, your honor. May we approach the bench?

"The Court: You may approach the bench."

The trial court overruled the defense counsel's objections to the introduction of the testimony and the line of questioning proceeded as follows:

"Q. [Prosecution] I believe you have previously stated, sir, under oath that you do not own any firearms?

"A. No, I don't.

"Q. You do not possess any firearms?

"A. No, I don't.

"Q. Nor are there any firearms that you could have or had ready access to?

"A. Not unless I would have went out and bought one or got one from somewhere.

"Q. Do you recall back on [February] the 12th of 1989, members of the Columbus Police Department arriving at your apartment which you already testified to was 617 Seymour Avenue?

"* * * *

"A. Yes.

"Q. And at the time did you allow the police officers into the apartment?

"A. No.

"Q. Did they go into your apartment?

"A. Yes.

"Q. And do you recall what was found in your apartment?

"Mr. Love: Objection.

"The Court: Overruled.

"A. What do you mean what was found?

"Q. [Prosecution] Were any firearms found?

"A. Yes.

"Q. Where?

"A. In the house.

"Q. Your house, your apartment?

"A. No.

"Q. Your house?

"A. Not in my house, not in my apartment.

"Q. Were you living there?

"A. I rented a room there.

"Q. Okay. You were living there?

"A. Yes.

"Q. As you stated previously, your address is 617 Seymour, right?

"A. Yes.

"Q. How many firearms did you have in the home?

"A. What do you mean did I have?

"Q. How many firearms were in the home?

"A. Well, they confiscated eight weapons.

"Q. How many?

"A. Eight.

" * * *

"Q. [Prosecution] Do you recall a .38 caliber RG long handgun with a barrel length of one-and-a-half inch?

"A. Well, they confiscated several guns. What they confiscated, I don't know.

"Q. Okay. Did you own that particular gun?

"A. No. At that point in time, I didn't own any guns.

"Q. Whose guns were these?

"A. Maybe they belonged to the guy who I rented the room from, I don't know.

"Q. Maybe they belonged to the guy that you rented the room from?

"A. Right. It was his house.

" * * *

"Q. * * * These items belonged to someone else?

"A. Yes.

" * * *

"A. I lived there with somebody else, not only me.

"Q. Okay.

"A. But the guy that rented me the room.

" * * *

"Q. * * * Who else maybe would have owned these guns?

"A. The guy that I rented the room from. It was his house. He still lived there during the course of me living there."

In *State v. Lancaster* (1971), 25 Ohio St.2d 83, 54 O.O.2d 222, 267 N.E.2d 291, the Supreme Court states as follows in paragraph three of the syllabus:

"Where a shooting is committed with a revolver, testimony by a rebuttal witness as to the accused's access to or ownership of revolvers in and around the time of the shooting is admissible after the accused has testified that he never owned or possessed a revolver at the time of the alleged crime."

In *Lancaster*, the court did not indicate the time frame involved between the shooting and the time when the defendant was seen with a revolver. In the present case, the prosecution inquired into appellant's possession of firearms while residing at 617 Seymour, two months after the death of the victim. The time frame involved is critical to the determination of the relevancy of the evidence. Had the evidence shown that appellant possessed firearms within a couple of weeks immediately prior to or immediately after the victim was shot, the evidence may have been relevant to have shown that the appellant had the opportunity to possess firearms. However, the evidence introduced by the prosecution was not relevant because of the time frame and did not meet the requirements enumerated in Evid.R. 404(B) or R.C. 2945.59 when such are strictly construed.

Furthermore, after review of the transcript and especially the testimony of the appellant and Lynette Scott, this court finds that the introduction of that inadmissible evidence certainly served to prejudice the appellant. Without the introduction of this evidence, the jury was faced with two equally believable or equally unbelievable witnesses. After the introduction of this inadmissible evidence, the jury had proof that the appellant had lied concerning whether or not he had ever possessed a gun. Also of importance is the fact that none of the guns confiscated by the police was the firearm which was used in the shooting.

Accordingly, appellant's first assignment of error is sustained.

█ Furthermore, in his second assignment of error, appellant argues that the trial court erred by permitting the introduction of impermissible and unfairly prejudicial rebuttal testimony by the prosecution. The testimony of Police Officer Douglas Beyer was introduced to show that he observed appellant inside the residence at 617 Seymour on February 12, 1989 with two .357 revolvers in his waistband. Inasmuch as this court has determined that that evidence as to appellant's possession of firearms two months after the shooting was impermissible, appellant's second assignment of error is also sustained.

In his third assignment of error, appellant argues that he was deprived of a fair trial as a result of the misconduct of the prosecution during closing arguments.

■ Both the prosecution and the defense have wide latitude in closing arguments as to what the evidence has shown and what reasonable inferences may be drawn therefrom. *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 53 O.O.2d 182, 185, 263 N.E.2d 773, 777. In *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883, the Supreme Court stated as follows:

"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *United States v. Dorr, supra,* at 120 [636 F.2d 117]. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. *Berger v. United States, supra,* at 88 [295 U.S. 78, 55 S.Ct. 629, at 633, 79 L.Ed. 1314, at 1321]. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *State v. Thayer* (1931), 124 Ohio St. 1 [176 N.E. 656]; DR 7–106(C)(4) of the Code of Professional Responsibility. Moreover, the code provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7–106(C)(1), and ' * * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *' EC 7–37." *Id.* at 14, 14 OBR at 318, 470 N.E.2d at 885.

■ The record in the instant case reveals that the trial court instructed the jury concerning statements and opinions offered by the attorneys at trial. The trial court stressed to the jury that the statements of the attorneys are not evidence. Concerning closing arguments in particular, the trial court instructed the jury that closing arguments are simply the attorneys' opinions as to what they think the evidence has already shown and what their opinion is as to how the jury should apply the law as the trial court has given them to that evidence. This court finds that the above instructions obviated any prejudice which may have occurred as a result of the prosecution's statements. See *State v. Bissantz* (1982), 3 Ohio App.3d 108, 3 OBR 123, 444 N.E.2d 92.

Accordingly, appellant's third assignment of error is not well taken and is overruled.

In his fourth assignment of error, appellant argues that the trial court committed error by failing to repeat in the charge to the jury at the conclusion of the evidence those matters previously covered in preliminary instructions. Defense counsel had requested that the trial court recharge the jury on the

issue of circumstantial evidence; however, the court declined to repeat any of the charge given during preliminary instructions.

In *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, the Supreme Court stated the law as follows at paragraph two of the syllabus:

"After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. (Crim.R. 30[A], construed.)"

In the *Comen* case, the trial court advised the jury that it was not going to reread the preliminary instructions which had been given, for example, as to credibility of witnesses and the weight to be given testimony and the separate functions of the jury and the trial court. However, the trial court indicated that, if during deliberations the jury found it necessary to have any of the instructions reread to them, the instructions would be reread.

■ In the present case, when defense counsel requested that the trial court recharge the jury as to circumstantial evidence, the trial court declined to do so. Instead, the trial court informed defense counsel that defense counsel could, in his closing arguments, remind the jury as to how the court had previously instructed them.

After review of the closing arguments of defense counsel, the record indicates that defense counsel did remind the jury as to those instructions which the trial court had given it concerning circumstantial evidence. As the court stated in *Comen*, on appeal, the appellant must demonstrate that he was prejudiced by the trial court's refusal to repeat all instructions. Additionally, appellant must present evidence that the absence of instructions on circumstantial evidence at the completion of counsel's arguments was prejudicial.

Review of the record does not demonstrate that appellant was prejudiced by the trial court's refusal to repeat the preliminary instructions nor was he prejudiced by the trial court's refusal to repeat the charges as to circumstantial evidence.

Accordingly, appellant's fourth assignment of error is also overruled.

In his fifth assignment of error, appellant argues that the cumulative affect of the improper cross-examination, rebuttal and closing argument by the prosecution, and the failure of the court to charge the jury properly on the issue of credibility, work to deprive appellant of a fair trial. Having addressed the issues raised herein previously in appellant's first, second, third and fourth assignments of error, appellant's fifth assignment of error is hereby sustained in part and overruled in part.

Based on the foregoing, appellant's third and fourth assignments of error are overruled. Appellant's first and second assignments of error are sustained and appellant's fifth assignment of error is sustained in part and overruled in part. Therefore, the judgment of the trial court is reversed and this matter is remanded to the Franklin County Court of Common Pleas for a new trial.

*Judgment reversed and*
*cause remanded for a new trial.*

PEGGY BRYANT and LORIG, JJ., concur.

GERALD F. LORIG, J., of the Clark County Court of Common Pleas, sitting by assignment.