The STATE of Ohio, Appellee,

v.

FLAHERTY, Appellant.

[Cite as *State v. Flaherty* (1992), 78 Ohio App.3d 718.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–659.

Decided March 17, 1992.

720

*Michael Miller,* Franklin County Prosecuting Attorney, and *Joyce Anderson,* Assistant Prosecuting Attorney, for appellee.

*James Kura,* Franklin County Public Defender, and *John W. Keeling,* Assistant Public Defender, for appellant.

———————

TYACK, Judge.

On May 6, 1988, Nancy Flaherty returned home from work in the early morning hours to find her garage door open, the door from the garage into the house open, and her husband's tool box lying in the middle of the garage floor. She went to a neighbor's house to get someone to accompany her as she entered the house. When she and the neighbor went inside the residence, they found some household items in disarray. Nancy was nervous and kept saying that something was wrong. When Nancy and the neighbor observed a pool of blood, Nancy started screaming. The neighbor then found Nancy's husband, Patrick, murdered.

A police investigation initially implicated brothers Joe and Mark Lawwell in the homicide. In November 1989, charges were filed in juvenile court against Nancy's daughter, Wendy Reed, who had been a girlfriend of Joe Lawwell. Ultimately, Wendy admitted to being a delinquent minor in that she had committed the offense of involuntary manslaughter with respect to the death of her stepfather. In return for her admission to the juvenile charges and a promise to testify, an attempt to bind Wendy over to be treated as an adult was abandoned. The practical result was that Wendy avoided the possibility of facing aggravated murder charges with a life sentence and no parole eligibility for twenty or thirty years at a minimum.

On November 9, 1989, Nancy Flaherty was charged by way of indictment with aggravated murder with death penalty specifications, aggravated robbery, theft and attempted theft. The essential theory of the case was that Nancy had, with prior calculation and design, solicited Joe Lawwell to kill her husband during the course of stealing items from the Flaherty house. The theft charges involved the receipt of the proceeds from Patrick Flaherty's life insurance and an attempt to obtain funds from the Victims of Crime Compensation Fund of the state of Ohio as a result of Patrick Flaherty's death.

A jury trial was ultimately commenced in March 1991. Joe and Mark Lawwell did not testify. Wendy Reed was a witness against her mother.

From the beginning of the trial on, the assistant prosecutors assigned to the case sought to elicit information from witnesses which cast Nancy Flaherty in a bad light while illuminating little or in some cases no information relevant to

the charges. Thus, the very first witness to testify was Kevin Flaherty, who acknowledged seeing very little of his late brother Patrick in recent years. Still, he was permitted to testify that his deceased brother had a speech impediment. He described Nancy as "pretty dominant" and testified that she physically "picked him [Patrick] up like hardly anything." Over strenuous defense objections, Kevin Flaherty was permitted to testify about a conversation he claimed he had had with Nancy as early as 1981, in which Nancy was recalled as having said that she had no doubt in her mind that she was going to hell.

The second witness at trial was Kimberly Strandwitz, who had been a nail technician who provided Nancy manicures for less than a year prior to Patrick's death. Kimberly was called to testify that Nancy had brought a boyfriend of Wendy Reed's other than Joe Lawwell into the hair salon to have him "de-geeked" before a date with Wendy. Again over defense objection, Kimberly was permitted to testify about a conversation on some unknown date in which Nancy Flaherty indicated that she (Nancy) was mad at the hair salon owner's daughter because the daughter had supposedly gotten Wendy thrown out of a local high school for drug involvement.

The fourth witness was Craig Frazier, the neighbor who accompanied Nancy into the house on the morning that Patrick Flaherty's body was found. Frazier was permitted to testify, over defense objection, that he thought it was "a little bit strange" that Nancy came to his house to ask him to accompany her into her house under the circumstances. Later in the trial, the defense attempted unsuccessfully to introduce evidence that at least some police officers did not think it the least bit strange for a woman who came home alone and found her garage door open, her husband's car gone, the door into the house open, and her husband's tools out of place, to ask a next-door neighbor to accompany her into the house. During cross-examination of the neighbor, a question was asked to ascertain the neighbor's knowledge of whether or not Nancy's desire for assistance was related to a seminar regarding rape Nancy had supposedly attended the previous week. A prosecution objection which did not identify the basis for objection to the question was sustained.

As evidentiary rulings such as set forth in the paragraphs above mounted, the attorneys for Nancy Flaherty began objecting less.

Ultimately, Nancy was convicted of aggravated murder with death penalty specifications, theft and attempted theft. She was acquitted of the aggravated robbery charge. After a sentencing hearing, she was sentenced to life in prison with no parole eligibility until she had served twenty full years of imprisonment. She also was sentenced on the theft-related charges.

A timely appealed has been pursued on Nancy Flaherty's behalf. Five assigned errors are submitted for our consideration:

"I. The defendant was deprived of her constitutional right to a fair trial and due process of law when the state introduced evidence of other acts of the defendant that were prejudicial in nature and by the presentation of other evidence that was improperly admitted.

"II. The defendant was deprived of her right to the effective assistance of counsel, in violation of her constitutional rights, due to the acts and omissions of counsel.

"III. The trial court erred when it entered a judgment of conviction against the defendant for aggravated murder when the conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

"IV. The trial court erred when it entered a judgment of conviction against the defendant on the two counts of theft when the convictions were not supported by sufficient credible evidence and were against the manifest weight of the evidence.

"V. The trial court erred by imposing felony sentences upon the defendant for the theft convictions when the jury failed to return findings of value in its verdict as required by R.C. 2913.61(A)."

■ The first assignment of error is in many ways the most critical. At trial, the prosecution was allowed to supplement the evidence relevant to the question of whether Nancy Flaherty (hereinafter "appellant") was in some way criminally liable for the death of her husband with a series of vignettes about appellant which gave all the appearances of having been offered in support of a theory "she's a bad person—find her guilty." Indeed, the appellate staff of the Franklin County Prosecuting Attorney's Office, to its credit, does not attempt to justify at least some of the vignettes. For instance, appellant's supposed comment about expecting an unpleasant after-life is not argued to have been even marginally relevant to any issue before the trial court.

On many occasions over the last ten years, this court has reversed convictions where irrelevant and prejudicial evidence has been presented to the jury. A review of the opinions indicates that they have been authored by or have been the subject of concurrency by virtually every judge who has been a member of this court in the last ten years. We have reversed convictions ranging from aggravated murder to misdemeanors where such irrelevant and prejudicial evidence has been submitted to the jury such that the fairness of the proceedings is seriously drawn into question.

To provide more specific examples, in *State v. Tucker* (June 23, 1988), Franklin App. Nos. 87AP–598 and 87AP–600, unreported, 1988 WL 66251, we reversed eleven felony convictions because police officers were permitted to give testimony which included their personal belief in Tucker's guilt—testimony in many ways analogous to asking when appellant became a suspect. In *State v. Jarvis* (Mar. 28, 1989), Franklin App. No. 88AP–611, unreported, 1989 WL 29366, a conviction for attempted rape was reversed because the trial court improperly admitted evidence of other instances of a criminal defendant's sexual activity. In *State v. Russell* (Dec. 30, 1988), Franklin App. No. 88AP–457, unreported 1988 WL 142070, a conviction for the forcible rape of an eleven year old was reversed because other-acts testimony was improperly admitted. A similar ruling was made in *State v. Edington* (Aug. 2, 1988), Franklin App. No. 87AP–871, unreported 1988 WL 81838, a case stemming from an aggravated burglary conviction.

Within the last two years, an aggravated murder conviction and a murder conviction have been reversed under circumstances analogous to those presented here. In *State v. Parrish* (1991), 71 Ohio App.3d 659, 595 N.E.2d 354, and *State v. Johnson* (Aug. 7, 1990), Franklin App. No. 88AP–761, unreported 1990 WL 113548, the convictions were reversed because prejudicial evidence not directly related to the charges before the court was admitted.

In keeping with this history of attempting to ensure fair trials for even those accused of the most serious of crimes, we reverse the convictions here. Our ruling is based especially upon the improper testimony of the first, second and fourth witnesses outlined above, to all of which the defense objected. However, additional testimony which was improperly admitted, some over defense objection and some not, tended to make the errors in admitting the testimony specifically cited even more prejudicial.

Since at least a reasonable likelihood exists that this case will be tried again, we will address the individual evidentiary rulings submitted under the first assignment of error, in hopes that the trial judge at a subsequent trial will be clear as to our interpretation of what, if any, admissible evidence is contained in the respective vignettes.

■ As to Kevin Flaherty, the comment as to appellant's expectation of a hellish afterlife is clearly inadmissible as utterly lacking in relevance. In fact, given the minimal opportunity Kevin had for observing either Patrick Flaherty or Nancy Flaherty, very little, if any, of his testimony would be admissible.

■ As to David Bailey, who had worked with appellant and Patrick Flaherty in the 1970s, no foundation for admissible relevant testimony was demonstrated. The fact that appellant may have made disparaging comments

about Patrick nine years or more before his death and over two years before their marriage is probative of nothing.

The cross-examination of Newton Jackson, Ph.D., who interviewed appellant at appellant's request, should be bound by Evid.R. 611(B), which provides:

"Cross-examination shall be permitted on all *relevant* matters and matters affecting credibility." (Emphasis added.)

Implicit in the rule is the requirement that matters which are irrelevant and do not affect credibility be excluded.

■ The testimony of Kimberly Strandwitz about appellant's desire for a new haircut for her daughter's boyfriend and appellant's displeasure with the daughter of the owner of the beauty salon also was irrelevant.

■ The testimony of former neighbor Lois Guiler about her conversations with appellant on the subject of Wendy Reed's drinking also provided no relevant evidence as to whether appellant was or was not involved in her husband's death. The same is true of the testimony elicited from Susan Browne, another former neighbor, on the subject of appellant's purchase and work habits. The latter two areas of inquiry can be classified as eliciting testimony to the effect that appellant is greedy, so she is likely to steal.

■ The testimony of Columbus police detective Robert P. Shirey about whether or not Nancy had been crying on the morning of the homicide would require significantly more foundation before it would be admissible. The average police officer is not sufficiently versed in psychology to render an opinion that a given individual's reaction to stress is normal or abnormal, especially a person as emotionally complex as appellant appears to be.

■ The same observations apply to the testimony and tapes from insurance claims adjuster Michael Duncan. The tapes of interviews with appellant which demonstrate that she fails on occasion to use politically correct speech likewise would have to have significant other relevance in order to avoid exclusion under Evid.R. 403(A), which requires:

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The testimony of Gerald Mann about his son's unfortunate suicide after dating Wendy Reed also would seem to carry a significant risk of unfair prejudice for purposes of Evid.R. 403(A).

■ The relevance of the testimony from Sergeant Michael Elkins as to when appellant became a suspect is minimal and in all likelihood excludable under Evid.R. 403(A). The prejudice associated with such inquiries includes

encouraging the jury to defer to the judgment of the police, who could be perceived as knowing more about the case than the jurors. Likewise, the testimony involves an element of expression of belief by the police that the accused is guilty, which is not admissible evidence.

■■■ Finally, Craig Frazier's testimony that appellant's request for assistance when she came home on May 8, 1988 was "strange" had no relevance. The refusal of the trial court to allow rebuttal of the assertion, once improperly admitted, risks an appearance at least that the prosecution and the defense were being held to different standards when relevance of evidence was being determined.

The first assignment of error is sustained.

■■■ The second assignment of error is overruled. Trial counsel functioned well above the level held to constitute ineffective assistance in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. This is not to say that counsel's performance could not be improved in some of the particulars set forth in appellant's brief. But, taken as a whole, appellant was given effective assistance of counsel.

■■■ The third assignment of error is also overruled. The evidence was sufficient to support a conviction and the verdict was not against the manifest weight of the evidence if Wendy Reed's testimony was credible. As an appellate court, we are unable to assess that credibility accurately. Given the standard for assessing the issues of sufficiency and manifest weight of the evidence set forth in the recent holding of the Supreme Court of Ohio in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, we cannot sustain this assignment of error. That standard, set forth in paragraph two of the syllabus in *Jenks,* provides:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *" (Citations omitted.)

Therefore, the third assignment of error is overruled.

■■■ The *Jenks* standard set forth above also applies to an assessment of the sufficiency and manifest weight of the evidence on the theft-related charges. The testimony, if believed, was sufficient for a reasonable juror to find appellant guilty. Hence, the fourth assignment of error is also overruled.

The fifth assignment of error is also overruled. The failure of the jury to render factual findings as to range of value of the money supposedly sought and/or obtained is not prejudicial in light of our disposition of the first assignment of error.

In sum, the first assignment of error is sustained, while the second, third, fourth and fifth assignments of error are overruled. Due to the extensive amount of prejudicial evidence which was erroneously admitted, all the judgments and sentences pursuant to jury findings of guilt are reversed and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and PEGGY BRYANT, JJ., concur.