[Cite as *State v. Stewart*, 2020-Ohio-5344.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-615 |
| v. | : | (C.P.C. No. 16CR-4807) |
| Juan A. Stewart, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 19, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher*.

**On brief:** *Yeura Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Juan A. Stewart, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of two counts of murder and accompanying firearm and repeat violent offender specifications. Finding no merit to the appeal, we affirm.

{¶ 2} On September 1, 2016, a Franklin County Grand Jury indicted appellant on one count of purposeful murder in violation of R.C. 2903.02(A), one count of felony murder in violation of R.C. 2903.02(B), and one count of having a weapon while under disability in violation of R.C. 2903.11. Related to both murder counts, the indictment alleged repeat

violent offender specifications, and for all three counts, the indictment alleged firearm specifications. All charges arose from the shooting death of Edward Williams on January 20, 2015.

{¶ 3} Appellant waived his right to a jury trial on the weapon under disability count and related firearm specification, as well as the repeat violent offender specifications attached to the murder counts. In May 2018, a jury trial began on the murder charges and related firearm specifications. The trial ended with a hung jury on both counts; accordingly, the trial court declared a mistrial. The trial court found appellant guilty on the weapon under disability count and attached firearm specification. In an amended judgment entry filed June 7, 2018, the trial court sentenced appellant to a two-year prison term on the weapon under disability offense and a consecutive three-year term on the firearm specification, for an aggregate prison term of five years. Appellant appealed the trial court's judgment; we affirmed. *State v. Stewart*, 10th Dist. No. 18AP-496, 2020-Ohio-1245.

{¶ 4} In August 2019, appellant was retried before a jury on the murder charges and related firearm specifications. The evidence presented by the state established the following.

{¶ 5} Roberta Turner, a long-time friend of appellant, often socialized with him at a club Damon Fluellen ran out of his house located at 833 St. Clair Avenue. The club was open all day and night and there were always "lots of people coming and going." (Tr. at 414.) Appellant lived in the neighborhood and, according to Turner, regarded Fluellen as a mentor.

{¶ 6} Late in the evening on January 19, 2015, Turner was with appellant at a bar located within a 3 to 4 minute walk from Fluellen's house. Turner left the bar around 11:45 p.m.; appellant remained there. At approximately 12:20 a.m. on January 20, 2015, Turner exchanged several text messages and phone calls with Fluellen, which prompted her to text appellant asking if he was "alright." (Tr. at 403.)

{¶ 7} Meanwhile, at approximately 12:12 a.m., Verlie Smith, a COTA bus driver, approached the intersection of 2nd and St. Clair Avenues and heard four gunshots. He observed an African-American man walking away from a truck parked on St. Clair in the area where the gunshots were fired. The man then walked toward two nearby houses. Smith could not see if the man entered one of the houses or walked between them. Almost

simultaneously, a car parked in front of the truck drove away.  The man Smith had seen walking was not in the car.  For safety reasons, Smith sat through three cycles of red lights. He eventually turned onto St. Clair and passed by the truck.  Through the open driver's door, he observed a man slumped over in the driver's seat.

{¶ 8}   Columbus Police Officer Jason Kulp and other officers were dispatched to the scene of the shooting. Kulp described the neighborhood as a "high-crime area" known for drug activity and shootings.  (Tr. at 264.)  Upon arrival, Kulp observed the victim seated in a truck parked directly across the street from 833 St. Clair.  He then observed a man, later identified as Fluellen, standing on the front porch of 833 St. Clair clad only in his underwear.  At Kulp's direction, Fluellen re-entered the house.  A short time later, Fluellen came back outside, this timely fully clothed. Because Fluellen's behavior seemed suspicious, officers sought and received permission to search his house.  The search revealed no evidence linked to the shooting.

{¶ 9}   The police interviewed Smith, who described the man he saw walking away from the truck as approximately 6 feet tall, weighing between 180 and 200 pounds, wearing a dark jacket and pants and a knit, toboggan-type hat.  He did not see a bill on the hat because the man was walking away and had his back to Smith.

{¶ 10}  At trial, Kulp identified surveillance video obtained from the Milo-Grogan Recreation Center, which is located across the street from the scene of the shooting.[1]  The video depicts a car with its headlights on approach and park on the street across from 833 St. Clair.  Approximately three minutes later, a truck arrives and parks behind the car. The video then depicts flashes of gunfire near the driver's side of the truck, followed by the shadow of a person walking between the car and the truck.  The car then drives away. Very shortly thereafter, a light at the back of 833 St. Clair illuminates, and the back door opens momentarily. The video then depicts a person moving around in the backyard.

{¶ 11}  Thomas Martin lives on Starr Avenue behind 833 St. Clair.  In the early morning hours of January 20, 2015, he observed a police helicopter with its lights illuminated hovering over his house.  Ten to fifteen minutes later, he heard the chain-link fence in his backyard rattle; he assumed that someone had jumped over the fence.    Later that morning he found a red Chicago Bulls baseball hat on the ground along the fence line.

---

[1] The surveillance video, admitted without objection as State's Ex. J, was played for the jury.

Thinking the person who lost it would likely return for it, he left it there. He retrieved the hat the next day and turned it over to the police.

{¶ 12} Detective Suzanne Nissley of the Crime Scene Search Unit identified several photographs taken at the crime scene which depict, among other things, Williams' body inside the truck.[2] The photographs also depict evidence recovered from the scene, including four .40 caliber spent shell casings found in the street and on the sidewalk near Williams' vehicle, as well as a .40 caliber Smith & Wesson semi-automatic handgun (with 1 live round in the chamber and a magazine containing 8 live rounds) found in the brush beside a fence by the alley at the rear of 833 St. Clair.

{¶ 13} Matthew White, a firearms examiner with the Bureau of Criminal Investigation ("BCI"), examined and test-fired the recovered weapon, found it to be operable, and determined that the four spent casings and three bullets recovered from the scene (two of which were recovered from Williams' body) had been fired from that weapon.

{¶ 14} Timothy Augsback, a BCI forensic scientist, analyzed DNA swabs taken from the firearm, including the trigger, the handled areas (the grip and the slide), the magazine, and the nine live rounds. That analysis revealed that the trigger, the magazine, and the handled areas contained a mixture of DNA, with appellant included as the only major contributor. DNA deposited by the minor contributors was insufficient to test. No DNA profile was obtained from the nine rounds. Augsback also analyzed DNA swabs taken from the baseball hat, which revealed a mixture of DNA, with appellant included as the only major contributor. He acknowledged that it is not possible to determine how or when DNA is deposited on an item; accordingly, he could not definitively state that appellant fired the weapon on January 20, 2015.

{¶ 15} Detective James Howe conducted a digital forensic examination and cell-site analysis of appellant's cell phone for the relevant time period. Within minutes of the shooting, appellant both received and sent calls and text messages from the general vicinity where the shooting occurred. Appellant's browser history revealed that after the shooting, he searched a local news website numerous times for information pertaining to the shooting.

---

[2] Nissley testified by videotaped deposition, which was admitted without objection as State's Ex. DD and played for the jury. Audio from the deposition was transcribed and is included in the trial transcript.

{¶ 16} Appellant presented the following evidence. Katie Hodge, a friend of appellant, communicated via cell phone with him several times on January 19 and 20, 2015. According to Hodge, appellant gave no indication during these communications that he was involved in Williams' shooting.[3]

{¶ 17} Jakita Smith-Goolsby, the mother of appellant's children, averred that appellant grew up in the Milo-Grogan area and lived there with his mother on January 20, 2015. He had many friends in the area with whom he often shared clothing items, including his vast collection of hats. She spoke with appellant by cell phone minutes before and after the shooting. She found nothing odd about their conversations; indeed, appellant was breathing normally and otherwise gave her no reason to believe that anything unusual had happened. She was shocked to later learn that appellant had been charged with Williams' murder.

{¶ 18} In addition to the testimony and exhibits presented, the parties entered into numerous stipulations. (State's Ex. GG.) Many of the stipulations confirmed the accuracy of evidence submitted by the state, including the events depicted on various surveillance videos (State's Ex. K, J, and L), records from appellant's cell phone (State's Ex. Q, Q1, Q2a and Q3a), records from Turner's cell phone (State's Ex. CC), records from Williams' cell phone (State's Ex. P1), aerial photographs of the crime scene (State's Ex. I), autopsy photographs and findings of Franklin County Deputy Coroner Dr. Kenneth Gerston (State's Ex. B11, B14, B17, B20, B29, and U), a photograph of Williams (State's Ex. V), still images of appellant taken from the cell phone video recorded on November 9, 2014 (State's Ex. Y, Y1, Y2, and Y3), photographs of appellant (Def. Ex. 1A through 1RR), and photographs depicting the location and condition of the firearm when recovered from the alley and fence line behind 833 St. Clair shortly after the homicide (State's Ex. A38, A39, A40, and A41.) The stipulations also included chain-of-evidence information related to the baseball hat (State's Ex. S1), DNA standards and submissions from Williams and appellant, and information regarding recovery and submission of the firearm and ammunition (State's Ex. M and N3b).

---

[3] Hodge was not available to testify in person at the August 2019 trial. The parties agreed to have the transcript of her testimony from the May 2018 trial read into the record. The jury was advised of this circumstance.

{¶ 19} Following deliberations, the jury returned verdicts finding appellant guilty of both murder charges and related firearm specifications. The trial court found appellant guilty of the repeat violent offender specifications.

{¶ 20} At sentencing, the trial court merged the murder counts, and pursuant to the state's election, sentenced appellant to 15 years to life for the purposeful murder. In addition, the court imposed a consecutive 3-year sentence on the firearm specification and a 1-year consecutive sentence on the repeat violent offender specification. The court further ordered that the sentence on the murder counts be served consecutive to the 3-year firearm specification but concurrent to the 2-year sentence imposed on the weapon under disability count. In sum, appellant's prison sentence was 22 years to life. On August 19, 2019, the trial court issued a judgment entry memorializing appellant's conviction and sentence.

{¶ 21} Appellant timely appeals, asserting the following two assignments of error:

> [I]. The trial court committed prejudicial error by allowing the admission of "other acts" evidence that was inadmissible and otherwise unfairly prejudicial, thereby depriving appellant of a fair trial.

> [II]. The verdicts of guilt as to murder, and felony murder, and the attached firearm specifications are against the manifest weight of the evidence.

{¶ 22} In his first assignment of error, appellant contends the trial court improperly admitted a November 9, 2014 cell phone video from appellant's Facebook page as well as three still images taken from the video which show him holding and firing a weapon.[4] Appellant claims the state utilized this evidence to prove that appellant had access to handguns, knew how to use them, and had a propensity to fire them. Accordingly, appellant maintains that the video and photographs constitute impermissible other acts evidence under Evid.R. 404(B) and impermissible prejudicial evidence under Evid.R. 403(A). Appellant claims the admission of this evidence prejudicially affected his substantial rights to a fair verdict.

{¶ 23} Prior to admission of the evidence, defense counsel objected on grounds that its probative value was substantially outweighed by the danger that the jury would

---

[4] The video, admitted over objection as State's Ex. Y, was played for the jury. The still images were admitted over objection as State's Ex. Y1, Y2, and Y3.

improperly infer that appellant acted in conformity with the conduct depicted in the video and photographs. Defense counsel argued that "[t]here's no evidence that it's his gun, [or] what the caliber is." (Tr. at 380.) The trial court overruled the objection, stating:

> I think we've dealt with this before. Number one, it's within three months of the actual shooting, I believe. The firearm in the video and the photographs appear similar to the actual firearm.
>
> And, you know, I guess it's a two-edged sword for you, because maybe that explains why your guy's DNA is on that gun. I think it's certainly relevant to the fact that he either had a similar firearm or handled a firearm.
>
> I'm happy to give the jury a limiting instruction if either side thinks that's appropriate with regard to it's [sic] being admitted for whatever relevance it might have to the similarity of the gun. Nobody can say it's the same gun. But, at any rate, I do think it's relevant, and I don't think its probative value is outweighed by any prejudice.

*Id.* at 380-81.

{¶ 24} Immediately prior to Turner's testimony regarding the video, the trial court instructed the jury as follows:

> You're going to see the video. She's going to talk about the video. I believe the video is going to show Mr. Stewart with a firearm at an earlier date. I want to instruct you that it's not direct proof that it's the same firearm.
>
> That's a question of fact for you to look at. You can consider whether the firearm looks the same, is it similar, but there's no direct proof that's the firearm in this case.
>
> Also, simply because he had a firearm on that date and time, you can't consider that as evidence of * * * bad character because he had a firearm and whatever he was doing with the firearm. It's being admitted with regard to, you know, is it similar? Is it the same? That's a question of fact for you to look at and for DNA issues.
>
> And both sides can make arguments about that, but you're not to consider it as bad character evidence or that he's guilty of this charge simply because he had a firearm from an earlier time. You're allowed to consider it for the reasons that I told you.

*Id.* at 404-05.

{¶ 25} Thereafter, Turner identified appellant as the person depicted in the video talking about a "strap," which is a street term for a gun.  (State's Ex. Y, Tr. at 408.)  As further identified by Turner, the video also depicts appellant holding a handgun, tucking it into the waistband of his pants, and subsequently firing it at the ground.  Turner also confirmed that appellant was the person depicted in the photographs.

{¶ 26} " 'A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party.' "  *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41, quoting *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16.  Moreover, "[e]rror in the admission or exclusion of evidence is grounds for reversal only where substantial rights of the complaining party were affected or substantial justice appears not to have been done."  *Jarvis v Hasan*, 10th Dist. 10AP-578, 2015-Ohio-1779, ¶ 70, citing *Faieta v. World Harvest Church*, 10th Dist. No. 08AP-527, 2008-Ohio-6959, ¶ 73.  "To show an evidentiary ruling has affected a substantial right, the party must demonstrate that the alleged error impacted the final determination of the case."  *Id.*, citing *Lips v. Univ. of Cincinnati College of Medicine*, 10th Dist. No. 12AP-374, 2013-Ohio-1205, ¶ 49.

{¶ 27} Appellant contends that admission of the video and photographs was impermissible pursuant to Evid.R. 403(A) and 404(B).  Evid.R. 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  All relevant evidence is admissible unless prohibited by evidentiary rule, statute, or constitutional provision.  Evid.R. 402.

{¶ 28} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  Although most evidence offered by the state is prejudicial, not all evidence is unfairly prejudicial.  *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107.  "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision."  *State v. J.L.S.*, 10th Dist. No. 08AP-33, 2012-Ohio-181, ¶ 39, citing *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001).

The court must balance the prejudicial effect of evidence against its probative value. *State v. Webster*, 8th Dist. No. 102833, 2016-Ohio-2624, ¶ 46.

{¶ 29} Evid.R. 404(B) sets forth the common law rule regarding the admissibility of evidence of previous or subsequent criminal acts that are wholly independent of the offense for which an accused is on trial. The rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show" that he acted in conformity therewith. The rule then incorporates a nonexhaustive list of exceptions to the common law rule, stating that "[e]vidence of other crimes, wrongs, or acts * * * may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 30} "An accused cannot be convicted of one crime by proving he committed other crimes or is a bad person." *State v. Jeffers*, 10th Dist. No. 06AP-358, 2007-Ohio-3213, ¶ 6, citing *State v. Jamison*, 49 Ohio St.3d 182, 183 (1990). "Because Evid.R. 404(B) codifies an exception to the common law with respect to evidence of other acts of wrongdoing, it must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *Id.*, citing *State v. Broom*, 40 Ohio St.3d 277 (1988), paragraph one of the syllabus. "The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment." *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992).

{¶ 31} Pursuant to Evid.R. 404(B), other acts evidence is admissible if: (1) there is substantial proof that the alleged other acts were committed by the defendant; and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Jeffers* at ¶ 8, citing *State v. Lowe*, 69 Ohio St.3d 527, 530 (1994). Both prongs must be satisfied for the evidence to be admissible. *Id.,* citing *State v. Echols*, 128 Ohio App.3d 677, 692 (1st Dist.1998).

{¶ 32} The video and photographs provide substantial proof that appellant held and fired a handgun on November 9, 2014. Comparison of that handgun with photographs of the handgun used to kill Williams reveal physical similarities between the two; both weapons are semi-automatic with two-toned (silver and black) metallic coloration. The

issue before us is whether appellant's prior act of holding and firing a weapon that appears to be physically similar to the one used in the murder tended to prove any of the enumerated exceptions to Evid.R. 404(B).

{¶ 33} At trial, the state did not use the video and photographs as evidence of appellant's bad character. Rather, the state used the evidence to prove appellant's identity as Williams' shooter. In closing argument, the state averred that the murder weapon "appears to be the same weapon that Juan Stewart had a short time earlier in a video. You can look at the features of the gun, and you can't say it is the gun. You can never say that unless you know the serial number or have identification. But look at that gun. Look at how he's holding it. Look at how he was holding it in the video when he fired the shots. We can even put the defendant in the possession of the same or very similar gun." (Tr. at 583.)

{¶ 34} Other acts evidence is admissible to show identity in two circumstances: (1) when the other acts " 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment' and which are 'inextricably related to the alleged criminal act,' " and (2) when the other acts involve a "unique, identifiable plan of criminal activity" so as to establish that the accused has a modus operandi or a "behavioral fingerprint" that he used in carrying out the charged offense. *Lowe*, 69 Ohio St.3d at 531, quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975). Other acts evidence necessarily "must be related to and share common features with the crime in question" to be admissible to prove identity through a certain modus operandi. *Id.* at paragraph one of the syllabus.

{¶ 35} The first circumstance is unquestionably absent here. Appellant's firing of a weapon more than two months prior to the instant offense does not "form part of the immediate background" of, and is not "inextricably related" to, Williams' murder. Instead, those actions are chronologically and factually separate occurrences.

{¶ 36} As to the second circumstance, we are not convinced that appellant's act of holding and firing a weapon that appears to be physically similar to the weapon used in Williams' murder provided a "unique, identifiable plan of criminal activity" that was helpful in determining the identity of Williams' shooter. "Other incidents must form a 'unique, identifiable plan of criminal activity' that, while not necessarily identical in all respects, is probative of the identity of the accused." *State v. Halsell*, 9th Dist. No. 24464, 2009-Ohio-

4166, ¶ 16, quoting *Jamison*, 49 Ohio St.3d at 183. The video depicts appellant firing a weapon at the ground outside a house during a party. Although appellant was in close proximity to several persons when he fired the weapon, he did not point the weapon at or even threaten anyone with it either prior to or after he fired it. Appellant's actions at the party, although reckless and potentially dangerous, are not probative of the identity of Williams' killer. Williams was not killed as a result of the shooter's reckless actions; rather, he was brutally murdered, shot at close range while seated in his truck.

{¶ 37} Further, the state presented no evidence specifically linking the gun appellant fired at the party with the gun used in Williams' murder. None of the state's witnesses, including the police officers and the ballistic expert, were shown the video or questioned about any similarities between the two guns. No testimony established the caliber of the gun appellant fired at the party, nor did testimony establish any shared specific or unique similarities tending to suggest that only appellant carried that style or make of weapon, which may distinguish him from other criminals. *Jeffers*, 10th Dist. No. 06AP-358, 2007-Ohio-3213 at ¶ 12. In addition, "the mere possession of a firearm, in and of itself, is not distinctive enough to demonstrate identity through pattern of conduct." *Id.* " '[U]se of such "garden variety" criminal acts to establish a pattern can only lead to an inference of propensity that is improper under Rule 404(B).' " *Id.*, quoting *United States v. Thomas*, 321 F.3d 627, 635 (7th Cir.2003). "Given the number of members of the public who own firearms, that [an accused] possessed a firearm two weeks before the murder here does not distinguish his identity from that of the general population." *Id.*

{¶ 38} Under the circumstances of this case, we conclude that appellant's holding and firing a similar-looking handgun on a prior occasion was not distinctive enough to demonstrate his identity as the shooter through a pattern of conduct. Thus, the prior act did not meet the strict requirement of a probative "behavioral fingerprint."

{¶ 39} In addition, "other acts offered as probative evidence of the matter must generally be temporally connected to the alleged crime." *Id.* at ¶ 9, citing *State v. Griffin*, 142 Ohio App.3d 65, 72 (1st Dist.2001). "The prior act must not be too remote and must be closely related in time to the offense charged." *Id.*, citing *Schaim*, 65 Ohio St.3d at 60. "A prior act that is too distant in time has no permissible probative value." *Id.*, citing *State v. Snowden*, 49 Ohio App.2d 7, 10 (12th Dist.1976). On this point, appellant relies on *State v.*

*Parrish*, 71 Ohio App.3d 659, 666 (10th Dist.1991), wherein this court found that evidence that the defendant possessed a firearm two months after the crime occurred was not relevant to show that the defendant had access to firearms at the time of the shooting because it was too remote in time. Indeed, we stated that "[t]he time frame involved is critical to the determination of the relevancy of the evidence. Had the evidence shown that [defendant] possessed firearms within a couple of weeks immediately prior to or immediately after the victim was shot, the evidence may have been relevant to have shown that the [defendant] had the opportunity to possess firearms. However, the evidence introduced by the prosecution was not relevant because of the time frame and did not meet the requirements enumerated in Evid.R. 404(B) or R.C. 2945.59 when such are strictly construed." *Id.* at 666.

{¶ 40} Here, the evidence established that appellant held and fired a weapon on November 9, 2014, over two months prior to Williams' murder. Pursuant to *Parrish,* appellant's prior act was too distant in time to have permissible probative value.

{¶ 41} The state argues that any error in the trial court's admission of the challenged evidence was harmless due to the trial court's limiting instruction and the strength of the other admissible evidence. We agree.

{¶ 42} " 'Error in the admission of other acts [evidence] is harmless when there is no reasonable possibility that the [evidence] contributed to the accused's conviction.' " *State v. S.A.A.*, 10th Dist. No. 17AP-685, 2020-Ohio-4650, ¶ 28, quoting *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 177. " '[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming.' " *Id.*, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 32. Moreover, as this court noted in *S.A.A,* both the Supreme Court of Ohio and this court have stated that a trial court's limiting instructions, which the jury is presumed to follow, reduce the chance that an accused was materially prejudiced by the admission of other acts evidence, even if improper. *Id.*, citing *State v. Peterson*, 10th Dist. No. 12AP-646, 2013-Ohio-1807, ¶ 23, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 24. For the reasons cited below, we agree that admission of the other act evidence, even if improper, was harmless beyond a reasonable doubt.

{¶ 43}  As noted above, prior to introduction of the video and photographs, the trial court instructed the jury that it could consider appellant's having a firearm and doing "whatever he was doing with the firearm" (which we construe as firing it), only in determining whether that firearm looked similar to the firearm used in the murder and not to prove appellant's bad character or that he was guilty of the instant offense.  We presume the jury followed this instruction.  *State v. Trewartha*, 10th Dist. No. 05AP-513, 2006-Ohio-5040, ¶ 20.

{¶ 44} Further, the state presented substantial competent, credible evidence of appellant's guilt unrelated to the prior actions depicted in the November 9, 2014 video. First, and most importantly, the evidence established that appellant's DNA was on the murder weapon.  Appellant's DNA was also found on a hat recovered from the back yard of a nearby neighbor who reported that he believed someone had jumped over his chain-link fence within 10 to 15 minutes of the shooting.  The evidence also established that the shooting occurred in front of a house owned by appellant's mentor, that the shooter walked toward that house immediately after the shooting, and that the murder weapon was recovered from brush near an alley at the rear of that house.  In addition, records of appellant's cell phone usage established that he was in the area at the time of the shooting, and that after the shooting, he searched a news website numerous times for information about the shooting.  In sum, the state presented "abundant, compelling," and admissible evidence of appellant's guilt.  *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 49.

{¶ 45} On this record, the impact of any error in admitting the video and photographs was minimal. Appellant's substantial rights were not prejudiced because there is no reasonable possibility that this evidence contributed to his conviction given the other evidence presented at trial.

{¶ 46} Appellant's first assignment of error is overruled.

{¶ 47} In his second assignment of error, appellant contends his convictions for purposeful murder, felony murder, and the attached firearm specifications are against the manifest weight of the evidence.  Appellant does not challenge the legal sufficiency of the evidence.

{¶ 48} When presented with a manifest weight challenge, an appellate court engages in a limited weighing of the evidence to determine whether competent, credible evidence

supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). " 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' " *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). However, "in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge,* 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). Accordingly, this court affords great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55.

{¶ 49} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Reversal on manifest weight grounds is appropriate " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 50} Essentially, appellant contends that his convictions are against the manifest weight of the evidence because the evidence supporting the jury's verdicts was circumstantial. We agree that the state's case against appellant was purely circumstantial. No eyewitness testimony positively identified appellant as the shooter. No evidence established that appellant knew Williams or had any connection to him, let alone had a reason to murder him. No evidence established that appellant was upset, angry, or acting strangely prior to or after the murder. However, " '[a] conviction can be sustained based on circumstantial evidence alone.' " *State v. Ford*, 10th Dist. No. 16AP-282, 2016-Ohio-8350, ¶ 13, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991), citing *State v. Nicely*,

39 Ohio St.3d 147, 154-55 (1988). Indeed, "[c]ircumstantial evidence possesses the same probative value as direct evidence." *Id.*, citing *State v. Sowell*, 10th Dist. No. 06AP-443, 2008-Ohio-3285, ¶ 89. "In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *Id.*, citing *State v. McBride*, 10th Dist. No. 10AP-585, 2011-Ohio-1490, ¶ 26, citing *State v. Ballew*, 76 Ohio St.3d 244, 249 (1996).

{¶ 51} A thorough review of the record reveals that the state presented ample competent, credible circumstantial evidence proving appellant's guilt. Appellant's DNA was on the murder weapon, and he was the only major contributor of that DNA. Appellant challenges the reliability of this DNA evidence, noting Augsback's testimony that the weapon had a mixture of other persons' DNA, and his admission that it was not possible to determine how or when appellant's DNA was deposited on the weapon. However, it was within the province of the jury to view Augsback as he testified, assess his credibility, and accept or discount his testimony, or portions thereof, as it deemed appropriate. *State v. Wren*, 10th Dist. No. 08AP-320, 2008-Ohio-6512, ¶ 10, citing *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889. A jury is "free to believe 'all, part, or none of a witness's testimony.' " *State v. Ellis*, 10th Dist. No. 16AP-279, 2017-Ohio-1458, ¶ 33, quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.

{¶ 52} Appellant's DNA was also found on the baseball hat found near the crime scene, and he was the only major contributor of that DNA. Appellant challenges the reliability of this evidence, noting Smith's testimony that the shooter was wearing a knit hat; however, Smith explained that he could not see a bill on the hat because the shooter was facing away from him. It was within the province of the jury to accept all, part, or none of Smith's testimony, including his explanation regarding the type of hat the shooter wore. Appellant also cites Smith-Goolsby's testimony that other people wore appellant's hats. Again, it was within the jury's purview to assess the credibility of each witness appearing before it, including the witnesses who testified on behalf of appellant. The jury simply could have disbelieved Smith-Goolsby's testimony, as she is the mother of appellant's children and thus may have had self-serving reasons to cast doubt on his guilt. "A conviction is not against the manifest weight of the evidence because the trier of fact chose to believe the state's version of the events over the defendant's version." *Id.*, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19.

{¶ 53} The evidence also established that the shooting occurred in front of a house owned by appellant's mentor, Fluellen, and that the shooter walked toward that house immediately after the shooting. Appellant claims that this evidence did not necessarily establish a connection to Fluellen. Appellant's argument suggests that the location of the shooting and the shooter's subsequent travels were merely coincidental. However, appellant's argument fails to take into account the fact that the murder weapon bearing his DNA was recovered near the rear of Fluellen's house.

{¶ 54} Finally, evidence of appellant's cell phone usage established that he was in the area at the time of the shooting, and that after the shooting, he searched a news website numerous times for information about the shooting. Appellant asserts that he checked the news sites only because the homicide occurred in his neighborhood, directly in front of his close friend's house, and he simply was interested in learning what had happened.

{¶ 55} All of appellant's challenges to the circumstantial nature of the evidence were matters that were presented to the jury, which was in the best position to evaluate the evidence presented at trial, including assessing the credibility of the witnesses. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we conclude that the jury did not clearly lose its way or create such a manifest injustice that appellant's convictions for purposeful and felony murder and related firearm specifications must be reversed and a new trial ordered.

{¶ 56} Appellant's second assignment of error is overruled.

{¶ 57} Having overruled appellant's first and second assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, J., concurs.
NELSON, J., concurs in judgment only.

NELSON, J., concurring in judgment only.

{¶ 58} I do not believe that the trial court's admission of evidence reflecting that Mr. Stewart had had control over a gun that jurors could find looked like the murder weapon used two and a half months later (and recovered with Mr. Stewart's DNA on it) was an abuse of discretion; I would not overrule the trial court's appropriately circumscribed evidentiary

ruling under these circumstances. And I agree that Mr. Stewart's convictions were not against the manifest weight of the evidence. I therefore concur in the judgment of the court.

————————————