[Cite as *State v. Stanford*, 2024-Ohio-1451.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                       :                   No. 21AP-351
(C.P.C. No. 18CR-5848)

v.                                                            :

(REGULAR CALENDAR)

Leo D. Stanford, Jr.,                               :

      Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on April 16, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee. **Argued:** *Taylor M. Mick*.

**On brief:** *Larry Scott Petroff* and *Jeremy Dodgion*, for appellant. **Argued:** *Larry Scott Petroff*.

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Leo D. Stanford, Jr., appeals the final judgment of the Franklin County Court of Common Pleas. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Stanford and Tiarra Seals ("Tiarra") had been dating for several years and lived together with their two young children. The relationship deteriorated, and Tiarra and the children moved into her parents' house in October 2018.

{¶ 3} The relationship remained in a state of discord, and Stanford began making threats towards Tiarra. Tiarra's father, Thomas Seals, intervened on multiple occasions and law enforcement responded to disturbances involving Stanford and Tiarra.

{¶ 4}   Shortly before the shooting, Stanford drastically altered his appearance by cutting off his long dreadlocks and was seen surveilling Tiarra's parents' house. Tiarra's parents instituted a schedule where a family member was with Tiarra at all times.

{¶ 5}   During the pre-dawn hours of November 18, 2018, Stanford hid in a car in front of Tiarra's parents' house. When Tiarra's ride to work arrived, Stanford walked up behind the car and fired several shots into the car. Tiarra and two co-workers were shot; Tiarra was fatally wounded but her co-workers survived.

{¶ 6}   Stanford was indicted on one count of aggravated murder, a violation of R.C. 2903.01; two counts of murder, violations of R.C. 2903.02; two counts of attempted murder, violations of R.C. 2923.02/2903.02; two counts of felonious assault, violations of R.C. 2903.11; and one count of discharging a firearm on or near prohibited premises, a violation of R.C. 2923.162. Each count included a three-year firearm specification pursuant to R.C. 2941.145(A).

{¶ 7}   Stanford's case proceeded to jury trial on September 28, 2020 and a mistrial was declared on September 30, 2020. Stanford's second trial commenced on May 10, 2021 and he was convicted of all charges on May 19, 2021.

{¶ 8}   On July 8, 2021, Stanford was sentenced to a total sentence of life imprisonment without the possibility of parole, plus an additional 30 year sentence to run consecutive to the life sentence.

{¶ 9}   Stanford now brings this appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 10}  Appellant assigns the following as trial court errors:

[1.] The trial court erred to the prejudice of Mr. Stanford when it allowed the introduction of prior bad acts into evidence.

[2.] Mr. Stanford's right to speedy trial was violated because he was not afforded the opportunity of a trial within the time required by statue.

[3.] Mr. Stanford suffered prejudice due to the ineffective assistance of counsel, in violation of his right to due process as guaranteed by the Ohio Constitution and the United States Constitution, when trial counsel failed to establish a foundation that would allow introduction of reports relied upon by the defense expert.

[4.] The trial court erred to the prejudice of Mr. Stanford by improperly sentencing him to consecutive prison terms.

[5.] The trial court erred to the prejudice of Mr. Stanford by improperly sentencing him to the maximum available prison term.

[6.] The convictions were against the manifest weight of the evidence in violation of Mr. Stanford's right to due process as guaranteed by the Ohio Constitution and the United States Constitution.

[7.] There was insufficient evidence to support the convictions of Mr. Stanford in violation of due process as guaranteed by the Ohio Constitution and the United States Constitution.

## III. LEGAL ANALYSIS

{¶ 11} In his first assignment of error, Stanford asserts that the trial court erred when it allowed the introduction of prior bad acts into evidence. "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68 (1975). Admissibility of other-acts evidence must be limited because there is substantial danger that a jury will convict a defendant on the assumption that the defendant has a propensity to commit criminal acts. *State v. Lewis*, 9th Dist. No. 29696, 2021-Ohio-1575, ¶ 7.

{¶ 12} Evid.R. 404(B)(1) instructs us that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Evid.R. 404(B)(2) allows use of other-acts evidence for other purposes.

{¶ 13} "Evidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B)—to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19. " ' "The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive." ' " *State v. Gideon*, 3d Dist. No. 1-18-27,

2021-Ohio-1863, ¶ 8, quoting *State v. Bagley*, 3d Dist. No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. Persohn*, 7th Dist. No. 11 CO 37, 2012-Ohio-6091, ¶ 23.

{¶ **14**} We analyze the admission of other-acts evidence under a mixed standard of review. The admissibility of other-acts evidence, pursuant to Evid.R. 404(B), is a question of law that must be reviewed using a de novo standard of review. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440. Next, if the other-acts evidence was offered for a permissible purpose, the determination of whether to then admit the evidence—after weighing its probative value against its prejudicial effect—is reviewed for an abuse of discretion. *Hartman* at ¶ 30; *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, ¶ 72.

{¶ **15**} " 'A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party.' " (Further quotation and citation omitted.) *State v. Stewart*, 10th Dist. No. 19AP-615, 2020-Ohio-5344, ¶ 26, quoting *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41.

{¶ **16**} The Supreme Court of Ohio has "explained the proper framework for determining the admissibility of other-acts evidence under Evid.R. 404(B)." *State v. Daylong*, 10th Dist. No. 19AP-279, 2021-Ohio-4192, ¶ 24. The standard requires courts to use a three-step analysis.

{¶ **17**} The first step and "threshold question for determining admissibility asks: is the evidence relevant?" *Hartman* at ¶ 24. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Evidence which is not relevant is not admissible." Evid.R. 402.

{¶ **18**} Other-acts evidence is subject to the relevancy determination and must be relevant to the particular non-propensity purpose for which it is offered. *State v. Steward*, 10th Dist. No. 19AP-615, 2020-Ohio-5344.

{¶ **19**} The second step is to consider if the other-acts evidence is probative of a "purpose other than the person's character or propensity to behave in a certain way." (Internal quotation and citation omitted.) *Graham* at ¶ 75. The non-propensity purpose must go to a material issue that is in dispute. *Hartman* at ¶ 27.

{¶ 20} The third step to consider is whether the evidence is more prejudicial than probative. *Hartman* at ¶ 29. Evid.R. 403(A) affords the trial court discretion "to determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence." *State v. Sims*, 4th Dist. No. 21CA15, 2023-Ohio-1179, ¶ 96. " 'In order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great.' " *State v. Hicks*, 10th Dist. No. 18AP-883, 2020-Ohio-548, ¶ 21, quoting *State v. Shipley*, 10th Dist. No. 12AP-948, 2013-Ohio-4055, ¶ 61.

{¶ 21} Both the probative value and prejudicial effect will depend on the degree to which the fact is actually in dispute. *State v. Dennison*, 10th Dist. No. 12AP-718, 2013-Ohio-5535. The more contested the issue the greater the probative value of the evidence that is used to prove the issue, and the risk of unfair prejudice decreases. *Id.* As Stanford argues, there is little physical evidence connecting him to the shooting, so the other-acts evidence testimony was highly probative of his identity and motive or intent. *Daylong* at ¶ 29.

> Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime. In that event other act evidence tends to show the defendant's identity as the perpetrator by showing that he committed crimes [,wrongs, or acts] of a similar methodology within a period of time reasonably near to the offense on trial, which itself would constitute probative evidence of the probability that the same person, whoever he or she may be, committed both crimes [,wrongs, or acts].

(Quotations omitted.) *State v. Fannon*, 4th Dist. No. 17CA24, 2018-Ohio-5242, ¶ 74, quoting *State v. Morris*, 9th Dist. No. 09CA0022-M, 2012-Ohio-6151, ¶ 24.

{¶ 22} "Motive evidence establishes that the accused had a specific reason to commit a crime." *Hartman* at ¶ 48. Evidence of a defendant's scheme, plan or system is relevant where other-acts evidence forms "part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment" or where identity of the perpetrator is in issue. *Curry* at 73.

{¶ 23} "There need be no similarity between the other-acts evidence and the crime charged under a motive theory; 'a dissimilar prior act is just as feasible in supplying a

motive for committing a crime as is a similar prior act.' " *Hartman* at ¶ 48, quoting Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019).

{¶ 24} "If the other acts tend to show by substantial proof any of the items enumerated in Evid.R. 404(B), evidence of other acts is admissible." *State v. Walker*, 1st Dist. No. C-190193, 2020-Ohio-1581, ¶ 47 (family members' testimony regarding threats and domestic violence showed the violent nature of the relationship between defendant and victim and her fear of him was admissible under Evid.R. 404(B) to show motive and intent). Testimony from neighbors who observed a defendant either physically assault or threaten to kill his wife was admitted as Evid.R. 404(B) evidence to show the defendant as the killer. *State v. Griffin*, 1st Dist. No. C-020084, 2003-Ohio-3196.

{¶ 25} The Supreme Court allowed other-acts evidence testimony of police officers who responded to a domestic violence call a month before a murder to show a strained relationship between a killer and his victim. *State v. Nields*, 93 Ohio St.3d 6 (2001). "The evidence defendant complains about tended to show his motive" to shoot Tiarra and her unsuspecting co-workers. *Id.* at 22.

{¶ 26} Previously, this court has held that other-acts evidence must have "a temporal, modal and situational relationship with the acts constituting the offense at issue." *State v. Jeffery,* 10th Dist. No. 96APA08-986, 1997 Ohio App. LEXIS 2844, *9 (June 30, 1997). Evidence of prior violent activity between a defendant and a murder victim is admissible if the prior incident is sufficiently connected in a temporal sense to the facts of the murder to be probative of the identity of the perpetrator. *See State v. Carter*, 6th Dist. No. L-13-1255, 2014-Ohio-5212, ¶ 28.

{¶ 27} The other-acts evidence occurred within 30 days of the shooting. The acts were circumstantial evidence used to identify Stanford as the shooter, and his motive and intent to do so. The "episodes, occurring several weeks before her death, were sufficiently connected in a temporal sense to the facts of [Tiarra's] death to be probative of the identity of the shooter." *Griffin* at ¶ 20.

{¶ 28} Stanford wants the trial court to ignore prior evidence of domestic violence and threats made to Tiarra. In addition, there are threats and e-mail messages regarding increasing volatility by Stanford. The evidence concerned actions that occurred within a few months of the shooting.

{¶ 29} The trial court instructed the jury that the other-acts evidence could not be considered to show that Stanford acted in conformity with the prior conduct. This instruction lessened any prejudicial effect from the other-acts evidence. *State v. Peterson*, 10th Dist. No. 12AP-646, 2013-Ohio-1807. A jury is presumed to follow orders and instructions of the court, and there is no evidence that the verdict was a result of improper consideration of other-acts evidence. *State v. Rossing*, 10th Dist. No. 18AP-784, 2020-Ohio-885.

{¶ 30} Stanford contends that the jury instructions provided little guidance and argues the court should have provided a permissible purpose for each piece of other-acts evidence. *Hartman* does not require the court's analysis to go that far, and we decline to do so here because intent and identity were permissible purposes for each piece of other-acts evidence.

{¶ 31} Stanford did not object to the instructions on that or any other basis. "Generally, the failure to object at trial or to request a specific instruction waives all but plain error with respect to the jury instructions." *State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 11. "Plain error is an obvious error * * * that affects a substantial right." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 108.

{¶ 32} The instruction mirrored the *Ohio Jury Instructions* for other acts and was tailored to the facts of the case:

> Evidence was received about the commission of acts other than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity with that character.
>
> If you find that the evidence of other acts is true and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the defendant's intent, purpose, or plan to commit the offense charged in this trial, and/or the identity of the person who committed the offense in this trial.
>
> Evidence was offered about the commission of crimes or wrongs or acts other than the offense with which Mr. Stanford is charged in this case. That evidence was offered only for a limited purpose. It was not offered and you may not consider

it to prove the character of Mr. Stanford in order to show that he acted in conformity or in accordance with that character. If you find that the evidence of other crimes, wrongs, or acts is true you may consider that evidence only for the purpose of deciding whether it proves that Mr. Stanford's motive, or his intent, or his purpose, or his plan to commit the offense charged in this trial or the identity of the person who committed the offense in this trial. That evidence cannot be considered for any other purpose. It does not follow from the Defendant's past acts that he committed the particular crime in this case. The State has the burden of proving each element of this particular crime beyond a reasonable doubt, and its burden is not satisfied by an inference that Mr. Stanford committed this crime because his past acts suggest a propensity to commit crimes.

That evidence cannot be considered for any other purpose.

Let me caution you that the evidence of the scheme, plan, or system is only one of the things you are to consider in determining identity. The state must prove identity beyond a reasonable doubt. If you find that the defendant committed the other act, you may not presume that he committed the acts charged. You may, however, consider the other act, along with all other evidence, in deciding whether the state has proved beyond a reasonable doubt that the defendant, rather than some other person, committed the offense charged.

(May 18, 2021 Jury Instructions at 5-6.) We presume that a jury follows the trial court's instructions. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735.

{¶ 33} A well-tailored limiting instruction can mitigate other-acts evidence. *Hartman* at ¶ 66. A limiting instruction will "reduce the chance that a defendant was materially prejudiced by the admission of testimony, even if improper." *State v. Spirnak*, 10th Dist. No. 19AP-261, 2020-Ohio-6838, ¶ 19.

{¶ 34} The other-acts evidence testimony established the immediate background surrounding the events leading up to the shooting and supports the premise that there was serious conflict between Stanford and Tiarra.

{¶ 35} The other-acts evidence was probative of identity and motive, preparation and plan, is temporally related to the shooting, and was not unduly or unfairly prejudicial to Stanford. Because there was a legitimate dispute about the shooter's identity, and the other-acts evidence is admissible for that purpose, the trial court did not act unreasonable,

arbitrarily, or unconscionably in finding that the probative value of the other-acts evidence testimony was not substantially outweighed by the danger of any unfair prejudice. The trial court did not abuse its discretion in making the Evid.R. 403(A) determination. Stanford's first assignment of error is overruled.

{¶ 36} In his second assignment of error, Stanford argues that he was denied his statutory right to a speedy trial.

{¶ 37} Under R.C. 2945.71(C)(2), the state is required to bring a defendant to trial on felony charges within 270 days of arrest. Each day the defendant is held in jail, in lieu of bail, counts as 3 days in computing this time. R.C. 2945.71(E). In addition, the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, guarantees an accused the right to a speedy trial.

{¶ 38} When an appellate court reviews an allegation of a speedy trial violation, it involves a mixed question of law and fact. *State v. Brown*, 10th Dist. No. 19AP-40, 2019-Ohio-4753, ¶ 21. We apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court. *State v. Watson*, 10th Dist. No. 13AP-148, 2013-Ohio-5603.

{¶ 39} R.C. 2945.73(B) requires a person charged with an offense to file a motion to dismiss on speedy trial grounds at or prior to the commencement of a trial. However, Stanford did not file a motion to dismiss, and his "failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal." *State v. Talley*, 5th Dist. No. 06 CA 93, 2007-Ohio-2902, ¶ 41.

{¶ 40} Crim.R. 52(B) mandates that any issue not properly preserved for appeal limits appellate review to plain error. *State v. Simms*, 10th Dist. No. 05AP-806, 2006-Ohio-2960, ¶ 10.

{¶ 41} The 270 day time limit may be tolled by certain events set forth in R.C. 2945.72(E) and (H), including continuances granted as a result of defense motions and any reasonable continuance granted other than on the request of the accused. *State v. Kist*, 173 Ohio App.3d 158, 2007-Ohio-4773 (11th Dist.). If a defendant refuses to sign a continuance request, "a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance, even over the defendant's objections." *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287, ¶ 17.

{¶ 42} Accordingly, defense counsel may " 'validly waive defendant's right to a speedy trial without his consent.' " *Dennison*, 2013-Ohio-5535, at ¶ 17, quoting *State v. Brime*, 10th Dist. No 09AP-491, 2009-Ohio-6572, ¶ 17. We have repeatedly followed this precedent. *See also State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 43 (10th Dist.) ("[a]lthough defendant did not personally agree to a continuance or waive his right to [a] speedy trial for that period of time, his attorney did so on his behalf"); *Glass* at ¶ 17 ("[i]t is well-established that a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance, even over the defendant's objections").

{¶ 43} A defendant's request for discovery is a tolling event pursuant to R.C. 2945.72. *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040. The discovery request tolls the speedy trial clock "only for the time it would reasonably take the state to respond to that request." *State v. Gonzalez*, 10th Dist. No. 08AP-716, 2009-Ohio-3236, ¶ 22. Stanford argues that the state should respond within 21 days of receiving a request for discovery, and for purposes of this matter only, accept that as a reasonable response period.

{¶ 44} Appellant was arrested on November 21, 2018 and remained incarcerated through his jury trial. The speedy trial clock started November 22, 2018, and unless extended by R.C. 2945.72, Stanford was entitled to trial on or before February 19, 2019. Crim.R. 45(A).

{¶ 45} Stanford tendered a request for discovery on December 6, 2018, and the state responded on January 4, 2019 and also filed and served a reciprocal request for discovery to Stanford. Stanford argued that 21 days was a reasonable time for the state to respond, and for purposes of this matter, we accept his concession. Stanford responded to the state's discovery request on July 22, 2020, 565 days later.

{¶ 46} Stanford refused to sign an initial continuance on January 30, 2019, but did sign the continuance entry constituting a valid speedy trial waiver on March 11, 2019. Stanford had been incarcerated for 110 days, but after subtracting the 21-day tolling period to allow the state to respond, only 89 days had run. Applying the R.C. 2945.71(E) "3 to 1" rule, 267 days passed, and Stanford signed a waiver of his speedy trial rights within the 270 day period.

{¶ 47} Stanford contends he was placed in a coercive situation where he had no choice but to sign the waiver. The waiver indicates that Stanford agreed to a continuance for more time to resolve his case. He did not refuse to sign the waiver, as he had done previously. The docket indicates that the matter was set for a continued trial on March 11, 2019. Stanford had the opportunity to exercise his speedy trial rights and go to trial, but chose not to. There is no evidence of coercion.

{¶ 48} Stanford's speedy trial rights were not violated. Stanford's second assignment of error is overruled.

{¶ 49} In his third assignment of error, Stanford argues that he was denied the effective assistance of counsel when trial counsel failed to establish a foundation that would allow introduction of reports used by his expert. We disagree.

{¶ 50} We use a two-pronged analysis to review a claim of ineffective assistance of counsel. First, appellant must demonstrate that "counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client." *State v. Miner*, 5th Dist. No. 2019 CA 00173, 2020-Ohio-5600, ¶ 16. If counsel is found to be ineffective, the court then determines if Stanford suffered prejudice as a result. *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). Stanford would have to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "The failure to establish either prong negates the need to consider the other." *State v. Childers*, 12th Dist. No. CA2023-01-006, 2023-Ohio-2436, ¶ 5.

{¶ 51} Trial counsel is granted considerable leeway in strategy, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. The parameters of reasonable assistance is broad, and scrutiny of counsel's actions "must be highly deferential." *State v. Albright*, 7th Dist. No. 14 MA 0165, 2016-Ohio-7037, ¶ 69.

{¶ 52} Stanford presented testimony of Dr. Jeffrey Neuschatz, an expert witness in the area of eye-witness identification. Evid.R. 703 requires an expert witness's opinion to be based on facts or data observed by the expert or evidence admitted at trial. It is

prejudicial error to allow expert testimony on reports not admitted into evidence. *Groves v. Mayfield*, 10th Dist. No. 87AP-597, 1988 Ohio App. LEXIS 2542 (June 23, 1988).

{¶ 53} Dr. Neuschatz developed a theory that Arthur Seals ("Arthur") identified Stanford as the shooter based on inference and not on memory. Dr. Neuschatz seems to suggest that Thomas Seals, father of Arthur, influenced his son's answers during police interviews.

{¶ 54} However, Arthur's identification was reliable. Arthur was alerted by the sound of running footsteps and saw Stanford standing under a streetlight firing at the vehicle Tiara had just entered. Arthur first tried to call Tiarra, who didn't answer the phone, and then he called his father and told him Stanford had shot up the car. Arthur then called 911, described the shooter, but did not tell the operator that Stanford was the shooter. Arthur identified Stanford as the shooter that morning during police interviews and acknowledged Stanford's identity by signing a picture of Stanford. Arthur identified Stanford in the courtroom as the shooter.

{¶ 55} Stanford alleges that his counsel was deficient for failing to admit recorded interviews of Arthur by police. While alleging the non-admitted reports were admissible hearsay, Stanford does little to prove his point.

{¶ 56} We note that there was no requirement for Stanford's counsel to admit the reports, and there is no evidence in the record about counsel's decision making process regarding the use of the unadmitted reports. Stanford has not shown that counsel's decision was not a strategic move that this court shall not second guess on appeal. *State v. Davis*, 12th Dist. No. CA2017-04-049, 2017-Ohio-8535. "Supposition is insufficient to establish a genuine issue regarding trial counsel's performance." *State v. Sims*, 8th Dist. No. 109335, 2021-Ohio-4009, ¶ 24.

{¶ 57} Further, Stanford fails to show how he suffered any prejudice. Stanford contends that counsel's failure to introduce specific admissible interviews prevented the expert from presenting his full report and opinions. However, he failed to address how the admission of the interviews would give rise to a reasonable probability that the trial court would have reached a different result.

{¶ 58} Stanford's third assignment of error is overruled.

{¶ 59} Stanford contends in his fourth assignment of error that the trial court erred in imposing consecutive sentences, and contends in his fifth assignment of error that the trial court erred in sentencing him to the maximum prison term. Because they are related, we shall address these assignments of error together.

{¶ 60} There is a statutory presumption that multiple prison terms will be served concurrently—not consecutively. R.C. 2929.41(A); *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, ¶ 21. However, R.C. 2929.14(C)(4) authorizes consecutive sentences after making consecutive sentence findings.

{¶ 61} A trial court may impose consecutive prison terms if "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and if "two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(C)(4) and (4)(b).

{¶ 62} R.C. 2953.08(G)(2)(a) and (b) sets forth the parameters of appellate review of felony sentences, including consecutive and maximum sentences, and provides that:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 63} The initial step in a consecutive sentence review is to ensure that mandatory consecutive sentence findings set forth in R.C. 2929.14(C) have been made. *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761. The trial court must make findings that first, "the consecutive service is necessary to protect the public from future crime or to punish the offender" and second, "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c). *State v. O.E.P.-T.*, 10th Dist. No. 21AP-500, 2023-Ohio-2035, ¶ 94.

{¶ 64} Once the reviewing court determines that the R.C. 2929.14(C) consecutive sentence findings have been made, it may then determine whether the findings are clearly and convincingly supported by the record. The "evidentiary basis" must be "adequate to fully support the trial court's consecutive-sentence findings." *State v. Carter*, 5th Dist. No. CT2022-0029, 2023-Ohio-829, ¶ 25.

{¶ 65} After noting that Stanford did not have any prior criminal convictions, the trial court emphasized the seriousness of the shooting and the resultant trail of victims, and made the following findings at sentencing:

> The Court does find that a consecutive sentence is appropriate because it's necessary to punish the offender and protect the public from future crimes; that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger he poses to the public; and that three offenses were committed as a part of one or more courses of conduct and the harm caused by the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(July 8, 2021 Tr. at 43.) These findings satisfy R.C. 2929.14(C)(4) and are supported by the record.

{¶ 66} A sentence imposed by a trial court cannot be reversed on appeal "unless it is contrary to law or the record clearly and convincingly fails to support the sentence." *State v. Rosales*, 2d Dist. No. 27117, 2018-Ohio-197, ¶ 23 (defendant's consecutive sentences for murder and felonious assault for killing an individual and wounding others during a shooting is not contrary to law and is supported by the record).

{¶ 67} Stanford also argues that R.C. 2953.08 allows this court to reduce his sentence because the trial court erred in the application of seriousness and recidivism factors. The trial court, however, addressed the factors in its R.C. 2929.12 analysis, and there is no need to review them again.

{¶ 68} R.C. 2953.08(G)(2) prohibits an appellate court from modifying or reversing consecutive sentences "using the principles and purposes of felony sentencing as set forth in R.C. 2929.11(A) and (B) and the seriousness and recidivism factors in R.C. 2929.12." *Carter*, 2023-Ohio-829, at ¶ 13. We can only modify a sentence if we find by clear and convincing evidence that, after a de novo review, the record does not support the sentence. Stanford's sentence is not contrary to law and the record supports the sentence. Stanford's fourth and fifth assignments of error are overruled.

{¶ 69} Stanford argues in his sixth assignment of error that the convictions are against the manifest weight of the evidence and argues in his seventh assignment of error that there was insufficient evidence to support his conviction. We will discuss these assignments of error together.

{¶ 70} When reviewing the weight of the evidence, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and decide whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983), *see also State v. Thompkins*, 78 Ohio St.3d 380 (1997). We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182 (1990), *cert. denied*, 498 U.S. 881 (1990). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations and citations omitted.) *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 220.

{¶ 71} In contrast, when a court reviews a record for sufficiency, "[t]he relevant inquiry is whether, " 'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 72} A sufficiency assignment of error "challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Koon*, 4th Dist. No. 15CA17, 2016-Ohio-416, ¶ 17. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶ 73} The jury was free to accept the testimony and evidence presented at trial or reject any and all of the evidence offered by the parties and assess the witness's credibility. " ' "While the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." ' " *State v. Nichols*, 10th Dist. No. 19AP-113, 2020-Ohio-4362, ¶ 47, quoting *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 Ohio App. LEXIS 2245 (May 28, 1996). Indeed, the jurors need not believe all of a witness's testimony but may accept only portions of it as true. *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958. "Further, 'the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. *See also State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25; *Columbus v. Dixon*, 10th Dist. No. 20AP-306, 2021-Ohio-4062.

{¶ 74} In a manifest weight review, we have held that " 'even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible.' " (Further quotations and citations omitted.) *State v. Cook*, 10th Dist. No. 19AP-353, 2020-Ohio-2844, ¶ 24, quoting *State v. Thompson*, 10th Dist. No. 14AP-488, 2015-Ohio-655, ¶ 29. Likewise, in a sufficiency of the evidence review, "[a] victim's testimony, alone, is sufficient to support a conviction." (Further quotation and citation omitted.) *Daylong*, 2021-Ohio-4192, at ¶ 40.

{¶ 75} Stanford challenges the manifest weight and sufficiency of the evidence on the basis that the identity of the shooter was not proven.

{¶ 76} While it is true that Arthur did not identify the shooter in the 911 call, he did identify Stanford as the shooter in his earlier phone call to Thomas Seals and later during

interviews. It is reasonable that the jury disregarded any confusion about certain details omitted in descriptions and phone call contents and found Arthur's identification credible. *Cook* at ¶ 28. The jury was in the best position to hear and resolve any inconsistencies in Arthur's testimony, and there has been no evidence presented that they acted improperly by considering unreliable and unbelievable testimony.

{¶ 77} We also note that other evidence also supports the jury's decision. The driver saw the shooter in his mirror and provided an accurate description. Testimony established that Stanford often drove his brother's blue Volkswagen, and Thomas Seals testified he saw Stanford in the car near his house just days before the shooting. The other-acts evidence established identity.

{¶ 78} The jury heard the evidence and chose to believe Arthur's testimony, which was well "within the province of the jury." *State v. Lee*, 10th Dist. No. 06AP-226, 2006-Ohio-5951, ¶ 14. The record contains ample evidence that Stanford was the shooter. Thomas Seals testified that he saw Stanford stalking/casing his house. Arthur testified that he witnessed Stanford shoot the car the victims were in.

{¶ 79} Having carefully considered the record in its entirety, we do not find that this is the exceptional case where the jury clearly lost its way and created an obvious miscarriage of justice warranting reversal on manifest weight grounds. Viewing the evidence in the light most favorable to the state, we further conclude that a rational trier of fact could have found, beyond a reasonable doubt, Stanford was guilty of the crimes for which he was convicted. Accordingly, the verdict is not against the manifest weight of the evidence and there was sufficient evidence adduced at trial to support Stanford's conviction. His sixth and seventh assignments of error are overruled.

## IV. CONCLUSION

{¶ 80} Having overruled Stanford's seven assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

_____